LEROY G. AND NANCY G. ROBERTS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21763-87.     Filed June 11, 1990.

*Sidney J. Machtinger,* for the petitioners.
*David P. Fuller,* for the respondent.

### OPINION

RUWE, *Judge:* This case was assigned to Special Trial Judge Larry L. Nameroff pursuant to section 7443A(b) of the Code[1] and Rule 180 et seq. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

NAMEROFF, *Special Trial Judge:* This case is before us on petitioners' motion to dismiss for lack of jurisdiction and to strike the portions of respondent's notice of deficiency pertaining to three partnerships: Paris Energy, Ltd. (Paris), Montague Energy Partners (Montague), and Comanche

---

[1]All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

Energy Partners (Comanche) (hereinafter referred to collectively as the TEFRA partnerships).

Petitioners' motion to dismiss for lack of jurisdiction and to strike was filed on March 22, 1989. Respondent filed a notice of objection to petitioners' motion on June 1, 1989. Thereafter, petitioners filed a response to respondent's notice of objection on August 3, 1989. A hearing on petitioners' motion was scheduled for October 25, 1989, at which time a stipulation of facts was submitted, as well as Rule 50(c) statements and oral argument.

Respondent determined deficiencies in petitioners' Federal income tax for 1980 and 1983 in the respective amounts of $3,792 and $498,483, plus additions to tax under section 6653(a) for 1980 in the amount of $190 and under section 6653(a)(1) and (2) for 1983 in amounts of $24,924 plus 50 percent of the interest due on $498,483, and under section 6661(a) for 1983 in the amount of $124,621. Respondent also determined that section 6621(c) was applicable. The notice of deficiency was issued on April 9, 1987. At the time of the filing of the petition herein, petitioners resided in Santa Ana, California.

In late 1982,[2] petitioners became limited partners in Paris, a California limited partnership organized to explore for oil and gas. The general partner of Paris was Paris Energy Development Co., Inc. Petitioners made an initial cash contribution to Paris of $35,750 and executed two promissory notes in favor of Paris on November 30, 1982, and December 20, 1982, each payable on or before January 17, 1983, in the respective amounts of $24,750 and $11,000.

A company called Tarmac Petroleum (Tarmac) apparently had acquired leasehold interests in real or mineral properties in several counties in Ohio. Philip A. Sigel (Mr. Sigel) was president of Tarmac. In 1982, Paris entered into a sublease agreement with Tarmac for a 100-percent working interest in certain of Tarmac's leasehold interests. In consideration of the sublease, Paris agreed to pay Tarmac a lease bonus, minimum annual royalties (MAR's), and production royalties.

---

[2] Our findings of fact herein are solely for the purpose of resolving petitioners' motion. Accordingly, the omission of words such as "alleged" or "purported" should not be construed as precluding trial on all factual questions.

The MAR's were fully recoupable against the production royalties. Paragraph 2.(f) of the sublease provides:

(f) So long as payments on the Minimum Annual Royalties are made out of production as provided for herein and except to the extent the Partners have personally assumed primary liability, Sublessor agrees to recover payment on any unpaid Minimum Annual Royalty only from the Partnership, and neither the General Partner nor the Limited Partners shall be liable therefor.

Paragraph 4 of the sublease provides:

4. *Assumption of Liability by Sublessee's Partners.*
Each limited partner of Sublessee shall personally assume primary liability for his pro rata share of the liability for the Minimum Annual Royalties for which Sublessee becomes obligated as of the effective date of this Sublease and for his pro rata share of certain liabilities for Minimum Annual Royalties in the future by executing an Assumption Agreement * * * .

In addition to the cash and notes given to Paris as described above, petitioners signed an assumption of liabilities agreement (the assumption agreement), which provides in pertinent part:

1. *Assumption of Liability.* The Partner hereby unconditionally assumes primary personal liability, without right of contribution from the Partnership or any other partner thereof, to pay pursuant to the terms hereof that amount of any Minimum Annual Royalty payable under the Sublease which the Partnership shall elect to defer pursuant to the terms thereof.

 *     *     *     *     *     *     *

7. *Nature of Obligations.* The obligations of the Partner hereunder are independent of any other obligations of the Partnership, and a separate action or actions may be brought and prosecuted against the Partner whether the action is brought against the Partnership or whether the Partnership is joined in any such action or actions.

Prior to investing in Paris or signing the assumption agreement, petitioners informed the promoters of Paris that they did not want to obligate themselves to pay at some future date the amount called for under the assumption agreement. In response, Mr. Sigel, the principal promoter, orally promised that petitioners, at their sole discretion and option, could cancel their obligations under the assumption agreement by transferring their interest in Paris to Tarmac.

Later, Mr. Sigel, on behalf of Tarmac, signed a document entitled Purchase of Partnership Interest, which provided:

### PURCHASE OF PARTNERSHIP INTEREST

For good and valuable consideration received, it is agreed that on the date 15 years from the date that the Sublease Agreement between Paris Energy, Ltd. and Tarmac Petroleum is executed, Tarmac Petroleum agrees to accept from the Limited Partner, his heirs, successors in interest, or assigns, his respective partnership interest in Paris Energy, Ltd. as payment in full for any liability outstanding or owed on the Sublease Assumption Agreement by Paris Energy, Ltd. to Tarmac Petroleum. Upon the offer to give us your partnership interest in Paris Energy, Ltd. for the cancellation of the Sublease Assumption, we agree to accept the partnership interest in Paris Energy, Ltd. and cancel any and all existing or future obligations under the Sublease Assumption Agreement and hold free the Limited Partners, their heirs, successors in interest, or assigns from any additional liability above the Limited Partnership interest in Paris Energy, Ltd. We waive the right to contest or litigate this Agreement.

On their 1982 Federal income tax return, petitioners deducted a flowthrough loss from Paris in the amount of $140,299. On their 1983 return, petitioners deducted an additional flowthrough loss from Paris in the amount of $81,194.

In late 1983, petitioners made initial cash contributions to Comanche and Montague in the amounts of $200,000 and $75,000, respectively. The structure of these investments was similar to the structure of the Paris investment. Comanche and Montague are California limited partnerships which, like Paris, were organized to explore for oil and gas. At the time petitioners invested in these partnerships, they executed minimum annual royalty assumption agreements obligating them to pay in 15 years their pro rata share of any accrued but unpaid minimum annual royalties owed by Comanche and Montague under oil and gas subleases to their respective sublessors. For Comanche, the sublessor was Poke-A-Hole Corp., an Oklahoma corporation. Montague's sublessor was Appalachia, Inc., a Texas corporation. The sole owner and president of both Poke-A-Hole Corp. and Appalachia, Inc., was Mr. Sigel.

As with Paris, respondent contends that petitioners were orally assured by Mr. Sigel, acting on behalf of Poke-A-Hole Corp. and Appalachia, Inc., that petitioners could, at their

sole discretion and option, cancel their obligations under the assumption agreements with Comanche and Montague by transferring their interests in these partnerships to the appropriate corporate sublessors. On petitioners' 1983 return, flowthrough losses from Comanche and Montague were deducted in the respective amounts of $784,041 and $288,305.

Paris, Comanche, and Montague are partnerships within the meaning of section 6231(a)(1). They are subject to the provisions regarding unified partnership proceedings under section 6221 et seq., (hereinafter referred to as the TEFRA (Tax Equity and Fiscal Responsibility Act[3]) provisions). Respondent did not commence any partnership proceedings for these TEFRA partnerships and, therefore, did not issue notices of final partnership administrative adjustment (FPAA's) with respect to Paris, Comanche, and Montague for 1983. The limitations period for issuing FPAA's pertaining to the 1983 returns of these partnerships expired on April 15, 1987. See sec. 6229(a). Consequently, the tax treatment of all partnership items with respect to these partnerships is final in accordance with the tax returns filed by these partnerships. Clearly, there can be no partnership proceedings to adjust or modify the partnership items as reported on the 1983 returns of Paris, Comanche, and Montague.

In the notice of deficiency, respondent disallowed all of the claimed losses from the partnerships. The explanation of adjustments for each partnership contained numerous reasons for disallowing the partnership losses. These reasons included petitioners' failure to establish that: (1) The partnerships possessed the requisite profit objective with regard to their activities; (2) the amounts claimed as MAR's were actually paid or incurred and, if paid or incurred, were ordinary and necessary trade or business expenses; and (3) the MAR's and/or assumption agreements qualified as additions to petitioners' basis in each partnership. In addition, the explanation of adjustments contained the following paragraph for each partnership:

It has not been established that the minimum annual royalty obligations, and/or the assumption of those obligations by the partners, qualify as

---

[3]Pub. L. 97-248, 96 Stat. 648 (1982).

additions to the partners' amount at risk. The partners may not claim losses in excess of their amount at risk in the partnership.

The sole issue for decision is whether we have jurisdiction to hear respondent's contention that side agreements existed between petitioners and the sublessors (or Mr. Sigel) and, if so, whether those agreements protected petitioners against loss within the meaning of section 465(b)(4) with regard to the assumption agreements for Paris, Comanche, and Montague.[4]

Respondent has conceded that petitioners' motion should be granted with respect to all grounds other than the at-risk explanation set forth in respondent's notice of deficiency for the disallowance of claimed flowthrough losses from the partnerships. However, respondent continues to assert that petitioners are not at risk under section 465(b)(4) with respect to the three assumption agreements, and that the flowthrough deductions relating to such amounts should be disallowed.

Section 465 provides that, where an individual invests in certain activities, any loss from such an investment shall be allowed only to the extent that a taxpayer is at risk with respect to the activity at the close of the taxable year. Sec. 465(a)(1). Borrowed amounts are considered to be at risk where, among other requirements, the amounts have been borrowed for use in the activity, and the taxpayer is personally liable for the repayment of the borrowed amounts. Borrowed amounts are also considered to be at risk where the taxpayer has pledged property, other than property used in the activity, as security for the borrowed amounts. Sec. 465(b)(2). Borrowed amounts are not at risk, however, to the extent such amounts are protected against loss through "nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements." Sec. 465(b)(4).

Respondent contends that petitioners entered into side agreements with various third parties, which served as "stop loss agreements, or other similar arrangements." Respondent further asserts that these side agreements

---

[4]The 1980 deficiency is the result of a disallowed investment tax credit carryback from 1983 and is attributable to the TEFRA partnerships' issues. The 1980 deficiency, as well as all of the additions to tax, will be affected by the decision in this matter. See *Maxwell v. Commissioner,* 87 T.C. 783 (1986).

effectively relieved petitioners of any potential liability for the amounts owed under the terms of the assumption agreements. Respondent argues that the existence of a partner-level, third-party side agreement and its effect on a partner's amount at risk may be adjudicated as an "affected item" in a deficiency proceeding.

Section 6225(a) restricts the assessment of a deficiency attributable to any "partnership item" prior to the issuance of an FPAA. Section 6230(a)(2)(A)(i) authorizes use of the deficiency procedures to assess deficiencies attributable to "affected items which require partner level determinations." When an FPAA is issued, deficiency notices directed to affected items must await the outcome of the resulting partnership proceeding. *N.C.F. Energy Partners, Inc. v. Commissioner*, 89 T.C. 741 (1987). The TEFRA provisions are silent on the question of whether affected items may be adjudicated in a deficiency proceeding despite the absence of an FPAA after the running of the normal statute of limitations period for the partnership.

Section 6231(a)(3) defines "partnership item" as follows:

The term "partnership item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

The term "affected item" is defined as "any item to the extent such item is affected by a partnership item." Sec. 6231(a)(5). Section 301.6231(a)(5)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987) provides that the term "affected item" includes items unrelated to the items reflected on a partnership's return.

Congress enacted TEFRA to provide a method of uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. With regard to partnership items, Congress decided that a partner's tax liability should no longer be determined on a partner-by-partner basis. Instead, "the tax treatment of any partnership item [would] be determined at the partnership level." *Maxwell v. Commissioner*, 87 T.C. 783, 787 (1986). The purpose behind the enactment of section 6221 et seq. was to

have one proceeding to determine all of the partnerships items with respect to a partnership. All of the partners would be eligible participants in such a proceeding, and the results of that proceeding would then be automatically applied to each of the partner's returns without the necessity of further deficiency procedures.

In drawing the line between those matters that may be the subject of a partnership proceeding and those that may not be, the statute divides disputes arising from "partnership items" from disputes arising from other nonpartnership matters. If the tax treatment of a "partnership item" is at issue, the statute requires the matter to be resolved at the partnership level. Sec. 6221. In separating partnership adjustments from the deficiency procedures applicable in all other tax matters, Congress intended that all nonpartnership matters on a partner's Federal income tax return continue to be subject to the existing rules for administrative and judicial resolution of the partner's tax liability. *Maxwell v. Commissioner, supra* at 788.

Petitioners rely on our statement in *Maxwell* that "Affected items depend on partnership level determinations, [and] cannot be tried as part of the personal tax case, and must await the outcome of a partnership proceeding." *Maxwell v. Commissioner, supra* at 792. Petitioners have taken that statement out of context. In *Maxwell*, respondent had determined deficiencies and additions to tax by disallowing certain claimed partnership losses. At the time of the issuance of the notice of deficiency, however, a partnership proceeding had been commenced, but no FPAA had as yet been issued. Under those circumstances, the additions to tax were affected items and had to await the outcome of the partnership proceeding. They could not be determined as part of the personal income tax case.

However, the "outcome of the partnership proceeding" may be acceptance of the partnership return as filed as a result of the fact that there was no partnership proceeding and there can no longer be a partnership proceeding under the normal statute of limitations. We do not read section 6230(a)(2)(A)(i) to mean that a partnership proceeding must be opened and closed in order for there to be a determination with regard to an affected item. We also find no

requirement in the statute or regulations that prohibits affected items from being considered in a proceeding involving a personal tax case, providing subject matter jurisdiction exists.

After review of the facts in this case, we hold that petitioners' amounts at risk with regard to these partnerships are controlled by side agreements with third parties, are not partnership items, but are affected items and, therefore, do not have to be resolved in a partnership proceeding. In the instant case, respondent is alleging that there was a side agreement between petitioners and a third party, which materially affected the amounts petitioners had at risk in each partnership. The resolution of this issue would have no effect on any item that would affect all of the partners' respective returns and would have no affect on any item on the partnership return or the partnership's books and records. The existence and effect of the side agreements at issue are not items that a TEFRA partnership must account for under subtitle A in their books, records, or returns. Sec. 301.6231(a)(3)-1(a) and (b), Proced. & Admin. Regs. The instant TEFRA partnerships are not parties to these alleged side agreements. Therefore, neither the statutes nor the regulations mandate that the at-risk limitations in this case be treated as a partnership item.

Petitioners contend that the determination of amounts at risk pursuant to section 465 is exclusively a partnership item. In this regard, petitioners rely upon section 301.6231(a)(3)-1(a)(1)(vi)(C), Proced. & Admin. Regs. However, that regulation identifies as partnership items, "Other amounts *determinable at the partnership level * * ** necessary to enable the partnership or the partners to determine * * * amounts at risk." (Emphasis added.) We believe that the side agreements allegedly involved herein are not "Other amounts determinable at the partnership level." They are items or amounts that can be dealt with once the partnership level items have been resolved.[5]

Petitioners contend that the language in the notice of deficiency pertaining to the at-risk determinations relates

[5]We note that sec. 465 explicitly restricts its application to individuals and C corporations. We express no view on whether an adjustment based upon sec. 465 can ever be a partnership item.

only to the at-risk attributes of the MAR obligations and the assumption agreements between petitioners and the partnerships. They contend that it does not refer to any side agreements. We disagree. The at-risk explanations in the notice of deficiency are sufficiently broad to permit evidence of third-party side agreements, and it is not necessary that the explanation of adjustments refer to all of the evidence upon which respondent relies.

Petitioners contend that we cannot have jurisdiction since resolution of the issue would require a review of partnership records, books, and returns. We disagree. Nothing in the TEFRA partnership provisions indicates that we cannot analyze documents and records at the partnership level in a deficiency proceeding. We lack jurisdiction only to redetermine partnership items that the partnership was required to take into account at the partnership level.[6] Sec. 6231(a)(3). In the absence of a partnership proceeding, those matters are considered final at the partnership level.

Petitioners also argue that, because respondent has conceded that petitioners' basis in the partnerships cannot be challenged in this action, respondent is foreclosed from invoking the at-risk rules. It is clear that there is a difference between basis and amounts at risk. In addition to the partner's cash or property investment in the partnership, a partner's basis also includes his basis in his liabilities to the partnership, as well as his aliquot share of partnership liabiliites. Sec. 1.752-1(a), Income Tax Regs. These basis rules may not reflect a taxpayer's true economic risk in a partnership. The use of nonrecourse financing and other risk-limiting devices in tax shelters result in the deduction of losses in excess of amounts actually placed at risk in an activity. To curb this abuse, Congress enacted section 465. General Explanation of the Tax Reform Act of 1976, prepared by the staff of the Joint Committee on Taxation, 1976-3 C.B. (Vol. 2) 47. Therefore, respondent may contest the amounts actually at risk within the meaning and intendment of section 465 without contesting petitioners' basis.

---

[6]To be a partnership item, the partnership need not actually have made a determination at the partnership level; it is only necessary that such a determination was required to have been made by the partnership. Sec. 301.6231(a)(3)-1(c), Proced. & Admin. Regs.

Petitioners' motion to dismiss will be granted, except as it may pertain to the at-risk issue regarding side agreements with third parties.

*An appropriate order will be issued.*