Thomas K. McMANUS and Margaret F. McManus, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

ESTATE of John C. GUTLEBEN, Deceased, United California Bank, Executor, and Vera B. Gutleben, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

ESTATE of Eleanor and Nelson CHICK, Deceased, Nelse Chick Siler, Executrix, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nos. 76–1527, 76–1528, 76–1531, 76–1532, 76–1760 and 76–1761.

United States Court of Appeals, Ninth Circuit.

Oct. 4, 1978.

Paul E. Anderson (argued), San Francisco, Cal., for petitioners-appellants.

Gilbert S. Rothenberg (argued), of Dept. of Justice, Washington, D. C., for respondent-appellee.

Before CARTER, Circuit Judge, KUNZIG, Judge,* and TANG, Circuit Judge.

TANG, Circuit Judge:

The taxpayers [1] appeal from a decision of the tax court, published at 65 T.C. 197 (1975), upholding the Commissioner's assessment of additional income taxes. We affirm.

Most of the facts were stipulated. The taxpayers were long-time associates in two construction companies. In 1954, they purchased a tract of land in Oakland, California. The tract was subdivided, and streets and utilities were installed. The subdivided parcels were then sold, with the last sale occurring in 1960.

In 1961, the taxpayers acquired a second tract, Tract 2347, which is the subject of this appeal. Tract 2347 is prime industrial real estate, and is located directly across the freeway from the taxpayers' earlier tract. Title was taken as tenants in common. The property, about 36½ acres, was purchased for $926,000.00.

Shortly after the purchase, the taxpayers applied to the city planning commission for permission to subdivide the property. A plat was filed in May, 1962, showing 14 separate plots and a street.

Between March and September, 1962, the taxpayers spent about $240,000.00 installing roads, sewer lines, water, gas and electrical facilities. The taxpayers also commissioned a study by the Stanford Research Institute on the feasibility of building an office building on the site. The report was generally unfavorable.

At various times between 1963 and 1973 portions of Tract 2347 were leased. The leases were for pipe storage, amusement rides, billboard advertising and car parking. All these leases were for short periods and the tax court found the total rental income over the period was nominal.

Between 1961 and 1973, various parcels of Tract 2347 were sold, and a parcel was condemned by the State of California. The parties disagree as to how many sales occurred during the period. The taxpayers claimed that there were only eight voluntary sales, while the Commissioner asserted that there were at least 15 sales.[2] The property was listed in the Western Real Estate News, the California Site Selection Handbook, and publications of the Califor-

---

* Honorable Robert L. Kunzig, Judge of the United States Court of Claims, sitting by designation.

1. As used in this opinion, the term "taxpayers" refers to Thomas McManus, John Gutleben, and Nelson Chick. All three men filed joint returns with their wives for the years in question, but their wives had no other connection with the transactions involved and though parties to this action they are not separately referred to. Gutleben died in 1972 and his estate was substituted for him in this suit. Chick died in 1975 and a similar substitution was made.

2. Part of this discrepancy may be due to a difference of opinion on what constitutes a "voluntary" sale. Apart from the parcel taken by the State of California, another parcel was acquired by the California Department of Motor Vehicles. The Department does have condemnation power though it was not used in this instance because the parties were able to agree on a price. After the California condemnation, the taxpayers agreed to exchange a parcel previously sold to Shell Oil Co. for another parcel. The original Shell parcel lacked highway access after the condemnation.

nia Chamber of Commerce. Each of these publications received wide circulation within the real estate industry. The taxpayers did not authorize the inclusion of Tract 2347 in these publications, nor did they take any steps to remove the listings though they were aware of them. The listings were made without charge. At one time, a broker was given an exclusive listing for one parcel. The tax court found that it was generally known among brokers that Tract 2347 was available for sale or lease. The taxpayers' connection with Tract 2347 ended in 1973 when the remaining portions of the property were sold to the Continental Development Company. At the time of this sale, Gutleben had died, and Chick was in poor health.

From 1961 to 1970, the financial transactions regarding the property were recorded by the taxpayers in a system of books that listed the property as an asset of McManus, Gutleben and Chick. Some of the entries in this account are labelled "Drawing 3 partners". Such draws were made in equal amounts to the individual taxpayers. In 1967, the taxpayers opened a bank account at the United California Bank in San Leandro, California; the signature card indicated all three were co-partners and the card was signed in their capacity as partners. From 1961 to 1970 partnership tax returns were filed in the name of McManus, Gutleben and Chick, which included the Tract 2347 transactions. After 1970, on the advice of counsel, the filing of partnership returns was discontinued. During the course of the audit preceding this suit, McManus wrote two letters to the Internal Revenue Service which stated that Tract 2347 was owned by the partnership of McManus, Gutleben and Chick, and that he was a member of the partnership.

In 1968, after the California condemnation, McManus purchased property in Fremont, California which he believed constituted replacement property under 26 U.S.C. § 1033. McManus did not notify the Com-

missioner that he had purchased replacement property until after April 1, 1970. No election under 26 U.S.C. § 703 was ever filed on behalf of the partnership.

In their individual tax returns, the taxpayers claimed the gain realized on the California condemnation as capital gains. On previous returns, gains from the sale of parcels of Tract 2347 had been reported as ordinary income. During the audit the taxpayers signed Form 872-A which provided for an extension of the statute of limitations for tax year 1968 until 90 days after either the Commissioner or the taxpayer gave written notice to the other revoking the extension. The Commissioner, on March 23, 1973, assessed deficiencies against the taxpayers on the basis that gain realized from Tract 2347 was ordinary income and not capital gains as reported.[3] The matter was heard by the tax court, which found for the Commissioner on all counts. The taxpayers now bring this appeal.

The taxpayers raise four issues. They claim that Form 872-A was ineffective, and therefore the assessments for 1968 were beyond the statute of limitations. They claim that the tax court erred in finding that Tract 2347 was not a capital asset and in finding that Tract 2347 was owned by a partnership. Finally, McManus claims that the tax court erred in holding that he could not avail himself of the benefits of 26 U.S.C. § 1033. Each of these matters will be discussed in turn.

## A. The Statute of Limitations

The statute of limitations, 26 U.S.C. § 6501, provides for a three year assessment period for income taxes, § 6501(a). However, § 6501(c)(4) also provides,

Where, before the expiration at the time prescribed in this section for the assessment of any tax imposed by this title, except for the estate tax provided in

---

**3.** The amounts assessed were as follows:

| | McManus | Gutleben | Chick |
|---|---|---|---|
| 1968 | 43,235.00 | 21,897.00 | 25,538.00 |
| 1969 | 1,120.00 | 1,577.00 | 1,667.00 |
| 1970 | 21,861.00 | 22,510.00 | 22,622.00 |
| 1971 | 1,113.00 | 0 | 0 |
| TOTAL | 67,332.00 | 45,984.00 | 49,827.00 |

chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

Absent an extension the assessment period for the tax year 1968 would have expired on April 15, 1972. The Commissioner issued the deficiency notices March 23, 1973.

The taxpayers argue that the form which they signed (Form 872–A)[4] is ineffective under the language quoted above because it does not set a definite time when the limitations period would end. In the taxpayers' view, Form 872–A extends the limitations period forever contrary to the intent of § 6501(c)(4). We are not persuaded.

This form does not, as the taxpayers contend, extend the limitations period forever. The tax court held that the waiver would be accepted and operative for a reasonable time only. The taxpayers do not contend that the assessments here, filed 11 months after the three year period, were unreasonably delayed, nor could they prevail on such a contention.

Nor does § 6501(c)(4) demand the reading the taxpayers give it. The statute requires an agreement between the taxpayer and the Commissioner; it does not require an agreement for a fixed period of time. If a fixed period is agreed to, it can be extended. The taxpayers could have cut the extension period to 90 days by sending a letter. They failed to do so. We fail to see any significant difference between not sending a letter here and granting a further extension. A similar agreement was upheld in *United States v. Mortell*, 248 F.Supp. 706 (N.D.Ill.1965). We hold that the 1968 assessments were not beyond the limitations period.

B. Capital Asset

The question here is whether Tract 2347 was "property held . . . primarily for sale to customers in the ordinary course of . . . trade or business" within the meaning of 26 U.S.C. § 1221(1). The taxpayers contend they bought the property and held it for investment and rental purposes. The Commissioner asserts the taxpayers were in the business of buying raw land, developing it, and selling it for profit, and that their activities with regard to Tract 2347 were part of this business.

■ In this circuit, a finding that a particular asset was or was not a capital asset is a finding of fact and must be upheld unless clearly erroneous. Rule 52(a), Fed.R. Civ.P.; *Parkside, Inc. v. Commissioner*, 571 F.2d 1092 (9th Cir. 1977); *Los Angeles Extension Co. v. United States*, 315 F.2d 1 (9th Cir. 1963). The case law has developed a series of factors to be evaluated in determining whether land is held for sale in the ordinary course of business. These factors are:

The length of holding of the property, the nature of the acquisition of the property, the frequency and continuity of sales

---

4. Form 872–A, in pertinent part, reads as follows:

That the amount(s) of any Federal income tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the tax year(s) ended . . .

under existing or prior revenue acts, may be assessed at any time on or before the 90th day after (1) mailing by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration, or (2) receipt by the Regional Appellate Division branch office considering the case of written notification from the taxpayer(s) of election to terminate this agreement, except that if in either event a statutory notice of deficiency in tax for any such year(s) is sent to the taxpayer(s), the running of the time for making any assessment shall be suspended for the period during which the making of an assessment is prohibited and for 60 days thereafter. If such statutory notice is sent to the taxpayer(s) and neither of the conditions enumerated (1) and (2) in the preceding sentence have occurred, the time for making such assessment will expire 60 days after the period during which the making of an assessment is prohibited. However, this agreement will not reduce the period of time otherwise provided by law for making such assessment.

over an extended period of time, the nature and the extent of the taxpayer's business, the activity of the seller about the property, and the extent and substantiality of the transactions.

*Parkside, supra* at 1096 quoting *Los Angeles Extension Co.*, 315 F.2d at 3.

■ Applying these factors to the facts here, we can not say that the tax court's finding was clearly erroneous. The taxpayers spent considerable time, money and effort in subdividing and improving the land; the sales were reasonably constant over time; there was active promotion of the site, which the taxpayers did not discourage; and the short-term leases which were granted were consistent with a desire to sell the property. Further, the taxpayers had been involved in a prior land development operation, thus, their activities with respect to Tract 2347 can reasonably be viewed as a continuation of their land development business. The taxpayers' contentions that the land was held primarily for leasing purposes is not necessarily supported by the record. The leases entered into were short-term at nominal rentals. The taxpayers' own study showed the site was not favorable for rental purposes. Parcels of land were sold. The contention that the sales were part of a liquidation is arguable. The sale to Continental Development Co. in 1973 may have been a liquidation but that was after the tax years involved here. The tax court's finding that Tract 2347 was held for sale in the ordinary course of business is not clearly erroneous and must be affirmed.

The taxpayers make a further argument that even if the property was held for sale in the ordinary course of business, once the State of California began condemnation proceedings, their holding of the condemned parcel changed to one for investment because the taxpayers could no longer sell the property. The circuits are presently in disagreement as to the effects of condemnation in these circumstances. The Fifth Circuit agrees with the taxpayers' argument, *Ridgewood Land Co. Inc. v. Commissioner of Internal Revenue*, 477 F.2d 135 (5th Cir. 1973). The Third Circuit views the condemnation as merely the method of effecting the sale of the property; the court noted that the price paid for the condemned land included the value of the improvements and was affected by the surrounding sales. *Juleo, Inc. v. Commissioner of Internal Revenue*, 483 F.2d 47 (3rd Cir. 1973) *cert. denied,* 414 U.S. 1103, 94 S.Ct. 737, 38 L.Ed.2d 559. We agree with the reasoning of the Third Circuit. The taxpayers had negotiated with various governmental agencies about the sale or lease of parts of Tract 2347. One parcel was purchased by the California Department of Motor Vehicles. Condemnation proceedings in this context meant only that the parties were unable to agree on the price, not that the character of the holding of the land was changed. *See Stockton Harbor Industrial Co. v. Commissioner of Internal Revenue*, 216 F.2d 638, 656 (9th Cir. 1954) *cert. denied* 349 U.S. 904, 75 S.Ct. 581, 99 L.Ed. 1241 (1955).

C. Partnership

The tax court found that the taxpayers had conducted their land business as a partnership. Whether this finding was correct matters only with respect to McManus' election under 26 U.S.C. § 1033. This finding was not erroneous.

■ Partnership for tax purposes is broader than common law partnership. See 26 U.S.C. § 761(a); Regs. § 1.761-1(a). Here the taxpayers kept their account books on a partnership basis, opened a partnership bank account, and most importantly filed partnership tax returns. That title to the land was taken as tenants in common is not determinative since that may be considered neutral evidence. A taxpayer is estopped from later denying the status he claimed on his tax returns. *See In re Steen*, 509 F.2d 1398, 1402 n. 4 (9th Cir. 1975); *Demirjian v. Commissioner of Internal Revenue*, 457 F.2d 1 (3rd Cir. 1972); *Maletis v. United States*, 200 F.2d 97 (9th Cir. 1952) *cert. denied* 345 U.S. 924, 73 S.Ct. 782, 97 L.Ed. 1365 (1953).

D. McManus' Election under 26 U.S.C. § 1033

■ Under the provisions of 26 U.S.C. § 1033(a)(3) the gain realized when property

is involuntarily converted will not be recognized if the proceeds are reinvested in similar or related property. Condemnation is a type of involuntary conversion. But § 1033 is effective only if a proper election to defer recognition is made.

In this case only McManus, in his individual capacity, purchased replacement property. The tax court held that the election had to be made by the partnership under the terms of 26 U.S.C. § 703(b), and McManus' election was therefore invalid. *Demirjian v. Commissioner of Internal Revenue*, 457 F.2d 1 (3rd Cir. 1972) is exactly on point and supports the tax court.

McManus argues that since a partnership is not a taxable entity, each partner can make his own elections. While it is true that a partnership is not liable for tax, the rest of the argument fails. A partnership is required to file returns, 26 U.S.C. § 6031, and the partners are required to conform their individual returns to the partnership returns. If each partner could determine his share of the partnership income separately, confusion would result, confusion which Congress meant to avoid by enacting 26 U.S.C. § 703(b). The tax court is correct on this point.

AFFIRMED.