12 F.3d 166
 73 A.F.T.R.2d 94-498, 94-1 USTC P 50,004
 Gerald W. and Geraldine M. BERGFORD, William G. and Barbara
Alhouse, John N. and Nancy M. Damas, William A.
and Judith Tauskey, and Monte S. and
Jerilyn F. Preece,
Petitioners-Appellants,
v.
COMMISSIONER, INTERNAL REVENUE SERVICE, Respondent-Appellee.
 Nos. 92-70241, 92-70242, 92-70443, 92-70445 and 92-70519.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 3, 1993.*
Decided Dec. 21, 1993.
 
 Andrew I. Fogler, Eisenberg Honig Fogler Dimas & Johnston, New York City, for petitioners-appellants.
 Gary R. Allen, Richard Farber, Sally J. Schornstheimer, U.S. Dept. of Justice, Tax Div., Washington, DC, for respondent-appellee.
 Appeal from a Decision of the United States Tax Court.
 Before: TANG, FARRIS, and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 This appeal requires us to decide whether the arrangement between owners of computer equipment and the manager of a sale-leaseback program to finance, purchase, lease, and remarket the equipment is a partnership subject to the unified audit and litigation provisions for partnership items under Secs. 6221-6233 of the Internal Revenue Code. The five actions that are the subject of this consolidated appeal were initiated by taxpayers in the Tax Court seeking redeterminations of the deficiencies in federal income tax and additions to tax determined by the Commissioner.[1] The Tax Court held that it lacked jurisdiction to hear the individual petitions because taxpayers' venture was a partnership, and no Final Partnership Administrative Adjustment (FPAA) had been issued by the Internal Revenue Service.
 
 
 2
 Our jurisdiction is based on 26 U.S.C. Sec. 7482. We review the Tax Court's determination of its jurisdiction de novo. Scar v. Commissioner, 814 F.2d 1363, 1366 (9th Cir.1987). We agree that the taxpayers' relationship with their co-participants and the manager falls within the Internal Revenue Code's definition of "partnership," and that the Tax Court lacked jurisdiction over taxpayers' petitions. We therefore affirm.
 
 
 3
 * The facts are undisputed. In 1985, taxpayers and seventy-seven other investors entered into a Subscription Agreement with First AmeriGroup Securities, Inc., subscribing for at least one unit of individual interest in AmeriGroup's "Crystal Star Eagle" Program. The Confidential Placement Memorandum for the CSE Program offered the right to acquire ownership interests as tenants-in-common in certain computer equipment.
 
 
 4
 That computer equipment had been bought by AmeriTec Leasing, Inc. from ComDisco; it was leased back by AmeriTec to ComDisco and sold to Eastwind Leasing Corp., and ultimately was leased to an end-user. Participants, including taxpayers, acquired interests in the equipment, which was simultaneously "net leased" back to AmeriTec for seven years.
 
 
 5
 Participants were obliged to deliver the subscription price to AmeriGroup Management, Inc., which was the Program manager. The subscription price of each unit was $30,000 in cash or notes plus the assumption of $126,660 in liability (subscription notes). The cash was used as a downpayment on the equipment, with the manager financing the balance using the subscription notes as security. Each participant then pledged his interest to the manager as security for the notes.
 
 
 6
 Each participant also executed a management agreement. This agreement authorized AmeriGroup Management, among other things, to arrange financing of the subscription notes and carry out any refinancing; arrange for execution of documents needed for the sale and leaseback of the equipment, and pay for the equipment; collect rent from the lessee and use the rent to pay off the notes financing the equipment; distribute the surplus; prepare statements; make distributions of the rent received on the equipment; and advance funds to participants, interest-free, to meet expected cash flow projections, to be repaid out of future rental receipts in excess of financing repayments.
 
 
 7
 The management agreement gives the manager the right to remarket a participant's interest in the equipment at the expiration or termination of the initial lease. At that time, the participants decide by majority vote whether to sell or lease the equipment; if there is no majority vote, the manager decides. Under the agreement, the manager is entitled to a remarketing fee of ten percent of the selling price or lease rentals less remarketing expenses, whether or not a participant terminates the agreement or the manager performs any remarketing services.
 
 
 8
 The initial term of the management agreement was one year, renewed yearly for twenty years unless terminated by sale of all the equipment; ninety days notice of termination before the end of any one-year term by a participant; breach or default that is not seasonably cured; the manager's inability to pay its debts or its bankruptcy; destruction of the equipment; passage of twenty years; or failure of the manager to remarket the equipment.
 
 
 9
 If a participant defaults on his obligation to pay the subscription notes pledged to the manager, the manager may terminate the participant's interest and use that interest in the CSE Program to satisfy the participant's unmet obligation. A participant may assign an interest in the Program only after fulfilling numerous conditions and obtaining the manager's consent.
 
 
 10
 Each taxpayer claimed losses, reported no rental income, and deducted depreciation expenses, interest expenses, and management fees, stemming from his co-ownership interest in the equipment on his 1985 federal income tax returns. The Commissioner disallowed taxpayers' claimed losses and asserted a deficiency. Taxpayers petitioned the Tax Court for review of the Commissioner's determination. The Commissioner moved to dismiss for lack of jurisdiction.
 
 
 11
 The Tax Court held that taxpayers were partners in a partnership. Since the notices of deficiency adjusted partnership items which are subject to review only in a unified partnership proceeding, the court agreed with the Commissioner's position that it lacked jurisdiction over taxpayers' individual petitions.
 
 II
 
 12
 Taxpayers argue that the Tax Court incorrectly relied on Bussing v. Commissioner, 88 T.C. 449, 1987 WL 49277 (1987) (Bussing I ), reconsideration denied by 89 T.C. 1050, 1987 WL 45773 (1987) (Bussing II ), which held that an investor in a sale-leaseback transaction had formed a partnership with his co-owners and with the seller/lessee of the equipment. Instead, they submit, their case is governed by Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949), Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946), and the IRS's own rules and regulations which state that mere co-ownership of property does not constitute a partnership. See, e.g., 26 C.F.R. Sec. 1.761-1(a); Rev.Rul. 75-374, 1975-2 C.B. 261. They contend that the nature of the relationship among participants turns on the kind of activity engaged in with respect to the equipment, and that because their involvement was passive, they were not actively engaged in the venture of leasing the equipment such that they should be treated as partners in a partnership.
 
 
 13
 The Commissioner, on the other hand, argues that the arrangement between the participants in the CSE Program and the manager providing for the joint financing of notes, purchase and leasing of equipment, continuation of the joint relationship after expiration of the lease, and shared economic interest in the residual value of the equipment, constituted a partnership for federal tax purposes. She points out that the term "partnership" is given a broad definition in the Internal Revenue Code, 26 U.S.C. Sec. 7701(a)(2), and regulations, 26 C.F.R. Sec. 301.7701-3(a), and that the structure of the arrangement and the authority and responsibilities of the manager go beyond mere co-ownership.
 
 
 14
 The Tax Court correctly held that taxpayers were engaged in a partnership for federal income tax purposes.
 
 
 15
 * The Internal Revenue Code defines a "partnership" in Sec. 7701(a)(2) as follows:
 
 
 16
 (2) Partnership and partner.--The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.
 
 26 U.S.C. Sec. 7701(a)(2).[2]
 
 17
 To determine whether a partnership has been formed, the court does not look simply to the stated intent of the parties; rather, it analyzes the terms of their agreement and their conduct. See Luna v. Commissioner, 42 T.C. 1067, 1077-78, 1964 WL 1259 (1964); Madison Gas & Elec. Co. v. Commissioner, 633 F.2d 512, 514 (7th Cir.1980) ("The arrangement is, of course, not taken out of this classification [as a partnership] simply because the three utilities intended to be taxed only as a co-tenancy and not as a partnership.").
 
 
 18
 A partnership for federal tax purposes is "broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships." 26 C.F.R. Sec. 1.761-1(a); see also McManus v. Commissioner, 583 F.2d 443, 447 (9th Cir.1978), cert. denied, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979). It does not matter whether state law classifies a venture as a partnership. Estate of Kahn v. Commissioner, 499 F.2d 1186, 1189 (2d Cir.1974).
 
 
 19
 For federal tax purposes, the Supreme Court has described a partnership as "an organization for the production of income to which each partner contributes one or both of the ingredients of income--capital or services." Culbertson, 337 U.S. at 740, 69 S.Ct. at 1213; see also Bussing I, 88 T.C. at 460 ("A partnership for Federal income tax purposes is formed when the parties to a venture join together capital or services with the intent of conducting a business or enterprise and of sharing the profits and/or losses of the venture."). In determining whether parties intended to conduct an enterprise jointly, the Court in Culbertson looked to "the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent." Culbertson, 337 U.S. at 742, 69 S.Ct. at 1214. And in Luna, the Tax Court identified other factors that bear on whether a venture is a partnership for tax purposes:
 
 
 20
 whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the form of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of account were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise.
 
 
 21
 42 T.C. at 1078.
 
 Finally, the regulations indicate:
 
 22
 Mere coownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits thereof. For example, a partnership exists if coowners of an apartment building lease space and in addition provide services to the occupants either directly or through an agent.
 
 
 23
 26 C.F.R. Sec. 1.761-1(a).
 
 B
 
 24
 Considering these factors, the Tax Court found that the economic benefits to the individual participants were not derivative of their coownership of the computer equipment, but rather came from their joint relationship toward a common goal. It also held that taxpayers' ability to partition out an interest, judicially if needed, was illusory. We cannot say it erred.
 
 
 25
 Taxpayers acted together with AmeriGroup Management in a long-term venture to finance, lease, and remarket the computer equipment. In reality, the participants have an interest in the CSE Program, not just in the equipment. As a practical matter, they must act in concert to buy the equipment and finance it, and none could sell, lease, or encumber the equipment without the consent of other participants. Although any participant has the right voluntarily to withdraw or assign his interest, consent of the manager must be obtained. In addition, the manager has the right to remarket the participants' interests and is to receive a remarketing fee regardless of whether a participant has terminated the management agreement. Termination does not, accordingly, affect the manager's economic interest in the value of the equipment. While taxpayers are correct that they have a right to partition the property, there is no indication that an individual unit interest has any appreciable value. Finally, at least to some extent the manager shares in the risk of gain and loss. Although the management agreement does not require the manager to loan money to participants if rental income fails to meet the anticipated return, the arrangement is structured to make advances available as needed. As the Tax Court presumed, the manager must have intended to honor that commitment and thus to undertake financial risk if necessary. Because the manager has the right to a remarketing fee regardless of whether a participant exercises the right to terminate the management agreement, the manager, as well as each other participant, has a continuing interest in the residual value of the equipment. These facts suffice to justify the Tax Court's conclusion that taxpayers, other participants, and the manager evidenced an intent to join together in a transaction in order to share profits and losses.
 
 C
 
 26
 Cases upon which taxpayers rely do not compel a different conclusion. Unlike here, in Levy v. Commissioner, 91 T.C. 838, 868, 1988 WL 114910 (1988), the taxpayers had the unilateral right to terminate the management agreement, leaving the manager with no remarketing fee or retained interest in future residual value. Levy and Van Roekel v. Commissioner, 56 T.C.M. (CCH) 1297, 1989 WL 13676 (1989), appeal dismissed, 905 F.2d 80 (5th Cir.1990), are also inapposite because the issue of whether the arrangement was a partnership was never raised or addressed in either case.
 
 
 27
 Nor does Rev.Rul. 75-374, 1975-2 C.B. 261, support taxpayers' position. In the situation discussed in the Ruling, two entities that owned an apartment project contracted with a management company to manage, operate, and service the project. The manager was compensated for extra services by the tenants, not by the co-owners of the property. The Ruling concludes that the provision of these additional services will not convert the co-ownership into a partnership so long as the co-owners had no financial stake in the manager's provision of these additional services.
 
 III
 
 28
 There is no dispute that a partnership is required to make a return for each year under Sec. 6031(a) of the Internal Revenue Code. Likewise, there is no dispute that the audit and litigation provisions of Secs. 6221-6233 apply to partnerships, and that if taxpayers were partners, the Tax Court would lack jurisdiction over taxpayers' individual petitions. Because taxpayers and AmeriGroup Management entered into an interlocking set of agreements, with shared responsibilities, shared profits, and possibly shared losses in the conduct of a jointly-run business venture, the Tax Court did not err in concluding that taxpayers, other participants and the manager had formed a partnership within the meaning of the federal income tax laws. Therefore, the Tax Court lacked jurisdiction and properly dismissed taxpayers' petitions for redetermination.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34(a); 9th Cir. R. 34-4
 
 
 [1]
 The actions were brought by Gerald W. and Geraldine Bergford, William G. and Barbara Alhouse, John N. and Nancy M. Damas, William A. and Judith Tauskey, and Monte S. and Jerilyn F. Preece (taxpayers). The Bergfords reside in California and therefore filed their notice of appeal to this court. The other taxpayers live elsewhere, but stipulated to venue in this court and their motions to the Seventh, Tenth and Fourth Circuits for transfer were granted
 
 
 [2]
 Section 761(a) is substantially identical, but it applies only to Subtitle A of the code. It also provides for opting out, which is not at issue in these cases