T.C. Memo. 2012-187

UNITED STATES TAX COURT

STEPHAN F. BRENNAN AND BETH A. BRENNAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MELVIN W. ASHLAND AND BROOKE C. ASHLAND, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25117-08, 25306-08.        Filed July 9, 2012.

William Edward Taggart, Jr., for petitioners in Docket No. 25117-08.

Arthur V. Pearson and Jason J. Galek, for petitioners in Docket No. 25306-08.

Lori Katrine H. Shelton, Elizabeth Wickstrom, and Matthew Williams, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge: These consolidated cases are before the Court on respondent's motion to dismiss for lack of jurisdiction and to strike a portion of petitioners Melvin and Brooke Ashland's (Ashlands) amended petition in Docket No. 25306-08.[1] Respondent determined over $1.8 million[2] of deficiencies in the Ashlands' Federal income tax for 1997, 1998, 1999, 2000, 2002, 2004 and 2005 (years at issue), plus a $3,184 addition to tax under section 6651(a)(1)[3] for 2000. Respondent also determined the Ashlands liable for over $370,000 of accuracy-related penalties under section 6662 for the years at issue. The sole issue is whether we have jurisdiction to hear the Ashlands' contention that Cutler & Company LLC (Cutler), a partnership for Federal tax purposes, made certain guaranteed payments entitling the Ashlands to a flow-through loss from Cutler for 2002. We hold that we

---

[1]Stephan Brennan and Beth Brennan are also petitioners in a consolidated case at Docket No. 25117-08. Respondent's motion relates only to the Ashlands' amended petition. Joseph Furey and Katherine Furey were petitioners in a consolidated case at Docket No. 25772-08 that has since been severed from these consolidated cases, and they have entered into a stipulated decision with respondent.

[2]All monetary amounts are rounded to the nearest dollar.

[3]All section references are to the Internal Revenue Code for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

lack jurisdiction, and therefore we will grant respondent's motion to dismiss and to strike in a separate order.

## FINDINGS OF FACT[4]

Some of the facts have been stipulated and are so found. The stipulation of facts, the first, second and third supplemental stipulation of facts and the accompanying exhibits are incorporated by this reference.

The Ashlands resided in Oregon when they filed the petition.

Ms. Ashland and Mr. Brennan were members of Cutler. Cutler managed asset portfolios for wealthy individuals and institutional investors. Ms. Ashland was Cutler's chief executive officer.

In 1997 Ms. Ashland and Mr. Brennan organized Airport Plaza to hold Cutler membership interests, according to the terms of a General Partnership Agreement for Airport Plaza (AP partnership agreement). The AP partnership agreement identified Airport Plaza as a California general partnership and Ms. Ashland and Mr. Brennan as partners. It reflected that Ms. Ashland and Mr. Brennan agreed to share Airport Plaza's profits and losses and that each of them was obligated to make a capital contribution of certain Cutler membership interests (Cutler membership

---

[4]Generally, we do not find facts when deciding motions. We do here, however, because the instant motion was made after trial in these cases began, and we now decide it after trial has ended.

interests). The AP partnership agreement also provided that Airport Plaza was to dissolve by its own terms at the end of 2001.

Cutler admitted Airport Plaza as a member (or a partner for tax purposes) under an Amendment to Operating Agreement for Cutler & Company LLC in 1997 (1997 Cutler operating amendment). Airport Plaza also entered into and executed an Amended and Restated Operating Agreement for Cutler & Company LLC on January 11, 2002 (2002 Cutler operating agreement). The 2002 Cutler operating agreement recites that in 1997, with the consent of the other members, Ms. Ashland and Mr. Brennan "transferred" their membership interests in Cutler to Airport Plaza. The 2002 Cutler operating agreement also unambiguously defines Airport Plaza as a Cutler member. Ms. Ashland executed both the 1997 Cutler operating amendment and the 2002 Cutler operating agreement on behalf of Airport Plaza. The signature blocks identified Ms. Ashland as a general partner of Airport Plaza and Airport Plaza as a Cutler member.

Cutler decided in 2002 after turmoil resulted among its members to restructure its business. To that end, Cutler, Ms. Ashland and certain other individuals entered into and executed an Agreement Regarding Restructuring of Cutler & Co. (restructuring agreement) in June 2002. The restructuring agreement provided that Airport Plaza would dissolve upon the closing of the sale of certain

Cutler assets and that the Cutler membership interest Airport Plaza held would be distributed at that time equally to Ms. Ashland and Mr. Brennan.

Airport Plaza filed a Form 1065, U.S. Return of Partnership Income, for 2002 and an amended Form 1065 for 2002 (collectively, AP partnership returns), with Ms. Ashland signing the AP partnership returns as an Airport Plaza general partner. Airport Plaza reported on the amended Form 1065 a $4,785,616 loss for a $4,300,616 "guaranteed payment" to Mr. Brennan and a $485,000 "guaranteed payment" to Joseph Furey, a former Cutler member. Airport Plaza allocated the entire reported loss to Ms. Ashland. Airport Plaza did not report on the amended Form 1065 any income or any other items besides the loss.

The Ashlands filed a joint individual Federal income tax return and an amended joint income tax return for 2002. The Ashlands claimed on their amended return for 2002 the loss deduction allocated to them from Airport Plaza. The Ashlands, however, were unable to use the entire loss for 2002. Consequently, they carried a portion of the unused loss back to 1997, 1998, 1999 and 2000 and carried forward the remainder of the loss to 2003, 2004 and 2005. Respondent sent the Ashlands a deficiency notice for the years at issue disallowing the claimed loss deduction from Airport Plaza, along with the associated net operating loss carrybacks and carryforwards.

The Ashlands filed a petition with this Court for redetermination. The Ashlands allege in the petition that Airport Plaza was a partnership that made certain guaranteed payments and that Ms. Ashland was an Airport Plaza partner. The Ashlands amended the petition. They allege in the amended petition that the purported guaranteed payments were actually made by Cutler, not Airport Plaza. The Ashlands have since conceded that neither Mr. Brennan nor Mr. Furey received a guaranteed payment from Airport Plaza.

Cutler filed a Form 1065 for 2002 on April 15, 2003 (2002 Cutler partnership return), which Ms. Ashland signed as Cutler's tax matters partner. The 2002 Cutler partnership return reports that Mr. Brennan and Mr. Furey received guaranteed payments. The 2002 Cutler partnership return does not reflect, however, the $4,785,616 of guaranteed payments that the Ashlands allege Cutler made to Mr. Brennan and Mr. Furey in addition to those reported on the 2002 Cutler partnership return. The limitations period for respondent to assess tax attributable to Cutler partnership items has lapsed. See sec. 6229. Similarly, the period for the Ashlands to request an administrative adjustment to Cutler's partnership items has lapsed. See sec. 6227(a)(1).

Respondent filed a motion to dismiss for lack of jurisdiction and to strike in Docket No. 25306-08 as to the Ashlands' allegation in the amended petition that

they are entitled to a flow-through deduction from Cutler as a result of the guaranteed payments Cutler purportedly made to Mr. Brennan and Mr. Furey in 2002.

OPINION

We are asked whether we have jurisdiction to decide whether Cutler made certain guaranteed payments entitling the Ashlands to a flow-through loss from Cutler for 2002. The Ashlands claim they are entitled to a flow-through loss from Cutler for 2002 stemming from certain guaranteed payments Cutler purportedly made to Mr. Brennan and Mr. Furey. Respondent asserts that we lack jurisdiction to decide whether the Ashlands are entitled to the claimed flow-through loss from Cutler.[5] Respondent argues that for Federal tax purposes Cutler was a partnership

---

[5]The Tax Court is a court of limited jurisdiction and may exercise jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Any party, or the Court sua sponte, may question jurisdiction at any time, even after the case has been tried and briefed. Normac, Inc. v. Commissioner, 90 T.C. 142, 146-147 (1988); Kahle v. Commissioner, 88 T.C. 1063 n.3 (1987). We have jurisdiction and indeed an affirmative duty to investigate the extent of our subject matter jurisdiction. See, e.g., Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (underlining that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"); United States v. Cotton, 535 U.S. 625, 630 (2002) (holding that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

- 8 -

subject to the provisions of TEFRA[6] and that the purported guaranteed payments are Cutler partnership items that can only be determined in a partnership-level proceeding, not in a deficiency proceeding as here. Consequently, respondent argues the Court is precluded from determining whether Cutler made the relevant guaranteed payments and whether the Ashlands are entitled to a corresponding flow-through loss deduction from Cutler. We agree that, if Cutler is treated as a TEFRA partnership, we lack jurisdiction to redetermine its partnership items including the purported guaranteed payments. See sec. 6221; sec. 301.6231(a)(3)-1(a)(2), Proced. & Admin. Regs.; see also Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575, 576 (1991); Maxwell v. Commissioner, 87 T.C. 783, 792 (1986). The Ashlands dispute that Cutler was ever a TEFRA partnership during 2002.

We focus now on whether Cutler was a TEFRA partnership during 2002. Generally, any partnership required to file a return under section 6031(a) is subject to TEFRA. Sec 6231(a)(1)(A). The parties' dispute over Cutler's TEFRA status centers around whether Cutler qualified for the small partnership exception to TEFRA. See sec. 6231(a)(1)(B). The small partnership exception exempts certain

---

[6]The Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. No. 97-248, sec. 402, 96 Stat. at 648.

partnerships with 10 or fewer partners from the provisions of TEFRA on an annual basis. Id. The small partnership exception does not apply to a partnership for a taxable year if any partner in the partnership during that taxable year is a "pass-thru" partner as defined in section 6231(a)(9). A "pass-thru partner" means a partnership, estate, trust, S corporation, nominee or other similar person through whom other persons hold an interest in the partnership. Sec. 6231(a)(9).

Here, the AP partnership agreement that Ms. Ashland entered into and executed cast Airport Plaza as a California general partnership. Ms. Ashland represented to respondent, consistent with Airport Plaza's partnership form, that Airport Plaza was a valid partnership for tax purposes for 2002. She did so by filing and signing the AP partnership returns as Airport Plaza's general partner.

Airport Plaza was to dissolve by its own terms at the end of 2001. The 2002 Cutler operating agreement, the Cutler restructuring agreement and the AP partnership returns indicate, however, that Airport Plaza was still in existence and winding down during 2002. In particular, they reflect that Airport Plaza held the Cutler membership interests contributed to it for part of 2002 before transferring them to Ms. Ashland and Mr. Brennan that same year. The Court of Appeals for the Ninth Circuit, to which these cases are appealable absent stipulation to the

contrary,[7] has held that even if a partnership is winding down, it is not considered terminated for Federal tax purposes until its only remaining asset is distributed to its partners and all other activity ends. Baker Commodities v. Commissioner, 415 F.2d 519, 527 (9th Cir. 1969), aff'g 48 T.C. 374 (1967); see also Austin v. United States, 461 F.2d 733, 737 (10th Cir. 1972); sec. 1.708-1(b), Income Tax Regs. Accordingly, the different agreements and the AP partnership returns show that Airport Plaza did not terminate for tax purposes until sometime during 2002.

Finally, the 1997 Cutler operating amendment and the 2002 Cutler operating agreement reflect that Airport Plaza became a member of Cutler in 1997 and continued as a member for part of 2002. In sum, the record reflects that Ms. Ashland cast Airport Plaza as a partnership for tax purposes and as a member of Cutler with respect to 2002.

The Ashlands contend, nevertheless, that Airport Plaza in substance was never a valid partnership for Federal purposes nor a member of Cutler and therefore argue that Airport Plaza could not have been a "pass-thru partner" of Cutler. We address the Ashlands' contentions in turn.

_____

[7]We follow the Court of Appeals decision squarely on point when appeal from our decision would lie to that court absent stipulation by the parties to the contrary. Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

Regarding Airport Plaza's partnership status, the Ashlands essentially seek to disavow the form that Ms. Ashland elected in organizing Airport Plaza as a partnership and filing the AP partnership returns with respondent. Respondent argues that the Ashlands are not entitled to disavow Airport Plaza's validity as a partnership for tax purposes.

We turn now to whether respondent may bind Ms. Ashland to the business form that she chose. A taxpayer is free to conduct business through a variety of business organizations. Once a business form is chosen and reported on a return, however, the taxpayer bears the risk that its chosen form is valid for Federal tax purposes. See McManus v. Commissioner, 583 F.2d 443, 447 (9th Cir. 1978), aff'g 65 T.C. 197 (1975); Maletis v. United States, 200 F.2d 97, 98 (9th Cir. 1952); see also Norwest Corp. v. Commissioner, 111 T.C. 105, 145 (1998). The Court of Appeals for the Ninth Circuit has held the Commissioner may bind a taxpayer to an adopted business form that the taxpayer represents as valid. See McManus v. Commissioner, 583 F.2d at 447; Maletis, 200 F.2d at 98; see also Steen v. United States, 509 F.2d 1398 (9th Cir. 1975). This rule holds true even if the adopted business form in substance is invalid for tax purposes. See Maletis, 200 F.2d at 98; see also Norwest Corp. v. Commissioner, 111 T.C. at 145-147. The rule exists because to permit taxpayers to challenge at will their own adopted form in favor of

what they assert is actually the true substance would encourage post-transactional planning, promote unwarranted litigation by taxpayers, and raise a heavy administrative burden on the Government, including substantial problems of proof. See Steen, 509 F.2d at 1402 n.4; see also Maletis, 200 F.2d at 98.

We shall not allow the Ashlands to disavow Airport Plaza's validity as a partnership for tax purposes under the circumstances. The record reflects that the Ashlands consistently cast Airport Plaza as a valid partnership and only first claimed that Airport Plaza was not a valid partnership for Federal tax purposes after these consolidated cases commenced. Further, the Ashlands only first disputed Airport Plaza's status as a partnership after it became inconvenient to their new theory of the case that Cutler, rather than Airport Plaza, made the purported guaranteed payments. To allow Ms. Ashland to challenge her chosen form and assert the priority of what she subsequently claims is the actual substance would only involve this Court in the Ashlands' post-transactional planning and undermine legitimate tax policy objectives. We decline that invitation.

We now turn to the Ashlands' contention that Airport Plaza was never a member of Cutler in 2002 or any other year. The sole thrust of the Ashlands'

contention is that neither Ms. Ashland nor Mr. Brennan ever actually transferred or assigned any Cutler membership interests to Airport Plaza. We find the Ashlands' claim that Airport Plaza was never a Cutler member contrary to the record. Indeed, Ms. Ashland has stipulated that Airport Plaza was a member of Cutler sometime between its organization and termination and that she contributed certain Cutler membership interests to Airport Plaza. These stipulations are conclusive admissions by Ms. Ashland that Cutler membership interests were transferred to Airport Plaza and that Airport Plaza was at some time a member of Cutler. See Rule 91.

With respect to Airport Plaza's membership in Cutler during 2002, the 2002 Cutler operating agreement that Ms. Ashland executed on behalf of Airport Plaza as its general partner unambiguously indicates that Airport Plaza was a member (and a partner for tax purposes) of Cutler in 2002. Accordingly, Ms. Ashland (and Cutler) held Airport Plaza out to third parties as a Cutler member. Moreover, as with her disavowment of Airport Plaza as a partnership, Ms. Ashland first sought to disavow the transactional documents casting Airport Plaza as a member of Cutler during 2002 only after this consolidated case began and then only after it became inconvenient to her new theory of the case. Again, we decline to facilitate the Ashlands' post-transactional planning. Applying Maletis and its rationale, we hold

that Ms. Ashland is bound by her election to cast Airport Plaza as a Cutler member in 2002.

In conclusion, the Ashlands cast Airport Plaza as a pass-thru partner of Cutler during 2002, and they are bound by that election. Accordingly, we reject the Ashlands' contention that Cutler was never a TEFRA partnership during 2002. We ultimately hold that we lack jurisdiction to hear the Ashlands' claim that Cutler made the purported guaranteed payments entitling the Ashlands to a flow-through loss deduction from Cutler for 2002.

We note that respondent may no longer adjust Cutler's partnerships items for 2002 as the relevant limitations period under section 6229 has lapsed. Likewise, the Ashlands may no longer seek an administrative adjustment to Cutler partnership items as the relevant period under section 6227(a)(1) has lapsed. Consequently, the Ashlands are bound by Cutler's treatment of partnership items for 2002. See Roberts v. Commissioner, 94 T.C. 853, 860 (1990). So too is respondent. See id.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing,

An appropriate order will be

issued granting respondent's motion.