T.C. Memo. 2012-209

UNITED STATES TAX COURT

STEPHAN F. BRENNAN AND BETH A. BRENNAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MELVIN W. ASHLAND AND BROOKE C. ASHLAND, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25117-08, 25306-08.[1]        Filed July 23, 2012.


William Edward Taggart, Jr., for petitioners in Docket No. 25117-08.

Arthur V. Pearson and Jason J. Galek, for petitioners in Docket No. 25306-08.

Lori Katrine H. Shelton, Elizabeth Wickstrom, and Matthew Williams, for respondent.

---

[1]These cases have been consolidated for trial, briefing and opinion. Joseph Furey and Katherine Furey were petitioners in a consolidated case at Docket No. 25772-08. The Fureys have since entered into a stipulated decision with respondent, and their case has been severed from these consolidated cases.

## MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined the following deficiencies, accuracy-related penalties under section 6662(a)[2] and additions to tax under section 6651(a):

Petitioners Stephan Brennan and Beth Brennan

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) |
|---|---|---|
| 2002 | $1,783,909 | $438,655 |
| 2003 | 91,652 | --- |
| 2004 | 68,296 | --- |

Petitioners Melvin Ashland and Brooke Ashland

| | | Penalty and addition to tax | |
|---|---|---|---|
| Year | Deficiency | Sec. 6662(a) | Sec. 6651(a)(1) |
| 1997 | $248,896 | $49,779 | --- |
| 1998 | 380,718 | 76,144 | --- |
| 1999 | 407,185 | 81,437 | --- |
| 2000 | 135,079 | 27,016 | $3,183 |
| 2002 | 439,876 | 87,975 | --- |
| 2004 | 135,011 | 27,002 | --- |
| 2005 | 123,095 | 24,619 | --- |

---

[2]All section references are to the Internal Revenue Code for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All monetary amounts are rounded to the nearest dollar.

There are three issues for decision.[3]  The first issue is to what extent (if any) the Brennans and the Ashlands must recognize capital gains income for 2003 and 2004 from the sale of certain assets by Cutler & Company LLC[4] (Cutler), a partnership for Federal tax purposes.  We hold that they each must recognize their

_____

[3]Respondent has conceded on brief his determination that Mr. Brennan failed to report a "guaranteed payment" of $4,300,616 (or any other amount) for 2002.  The Brennans have conceded that for 2002 they failed to report certain dividend income and a certain retirement distribution.  These concessions resolve the Brennans' deficiency for 2002.  The Brennans have also conceded the addition to tax under sec. 6651(a)(1) that respondent determined for 2002.  Additionally, the Brennans have conceded that they failed to report certain dividend income for 2003 and 2004 and certain gambling income for 2004.

The Ashlands have conceded that they were not entitled to a $4,785,616 flow-through loss deduction from Airport Plaza Partnership for 2002 from purported "guaranteed payments" Airport Plaza made.  In addition, our decision in Brennan v. Commissioner, T.C. Memo. 2012-187, bars the Ashlands from claiming that Cutler made certain "guaranteed payments" in 2002 entitling them to a $4,785,616 flow-through loss deduction from Cutler.  The flow-through loss deduction concession with respect to Airport Plaza and our decision resolve the Ashlands' deficiency for 2002.

The Ashlands' deficiencies for 1997, 1998, 1999, 2000, 2004 and 2005 are based on the disallowance of net operating loss carrybacks and carryforwards stemming from the claimed flow-through loss deduction from Airport Plaza for 2002.  Accordingly, these deficiencies too are resolved by the Ashlands' concession and our decision in Brennan.

All other issues either have been conceded or need not be decided because they follow from our holdings or are computational.

[4]Cutler changed its name to Table Rock Asset Management in 2003.  We refer to Table Rock Asset Management as Cutler for convenience and clarity.

distributive shares of the capital gains income for 2003 and 2004. The second issue is whether the Ashlands are liable for an addition to tax under section 6651(a)(1) for late filing of a Federal tax return for 2000. We hold they are liable. The final issue is whether the Ashlands are liable for the accuracy-related penalty under section 6662(a) for each year at issue. We hold they are liable.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the first, second and third supplemental stipulation of facts and the accompanying exhibits are incorporated by this reference.

The Ashlands resided in Oregon and the Brennans resided in Nevada when each filed a petition.

I. Background

Ms. Ashland and Mr. Brennan were members of Cutler. Cutler managed asset portfolios for wealthy individuals and institutional investors, charging management fees for its services. Cutler decided to restructure its business in 2002 after turmoil resulted among its members. To that end, Cutler, Ms. Ashland and Mr. Brennan, among others, entered into an Agreement Regarding Restructuring of Cutler & Co. (restructuring agreement) in June 2002. Cutler

agreed to sell certain institutional accounts, i.e., a customer list, under the restructuring agreement.

Cutler was to use the sale proceeds first to satisfy certain Cutler liabilities and obligations. Any remaining proceeds (net IA sale proceeds) were to be distributed to the members, including Ms. Ashland and Mr. Brennan, who were each to receive 44.985% of the net IA sale proceeds under the restructuring agreement. Mr. Brennan was to hold an economic interest in Cutler rather than a membership interest upon the sale of the institutional accounts. The economic interest conferred on Mr. Brennan the right to share in the income, gains, losses, deductions, credits or similar Cutler items and was to serve as collateral for Cutler's obligation with respect to the net IA sale proceeds. Ms. Ashland was to remain a Cutler member after the sale of the institutional accounts.

Cutler sold the institutional accounts to Fox Asset Management LLC (Fox) on October 31, 2002 (IA sale). Fox made certain payments to Cutler for the institutional accounts in 2003 and 2004, with the last payment being made in April 2004. Cutler did not distribute cash or any property to Mr. Brennan in 2003 or 2004.

Cutler filed for bankruptcy in April 2004. Ms. Ashland was the last remaining Cutler member as of September 2004.

II.  Tax Returns

Cutler filed Forms 1065, U.S. Return of Partnership Income, for 2003 and 2004.  Cutler reported $1,228,244 and $947,675 of long-term capital gains income from the IA sale for 2003 and 2004, respectively.

The Ashlands filed joint Federal income tax returns for 2003 and 2004.  The Ashlands reported a portion of the capital gains income Cutler reported from the IA sale for 2003.  They did not report any capital gains income for 2004.

The Brennans filed joint Federal income tax returns for 2003 and 2004.  The Brennans did not report any of the capital gains income for 2003 or 2004 that Cutler reported from the IA sale.

III.  Deficiency Litigation

Respondent issued the Ashlands and the Brennans separate deficiency notices determining that both failed to report capital gains income from the IA sale for 2003 and 2004.  Respondent took inconsistent positions in the deficiency notices with respect to the capital gains income reported on Cutler's Forms 1065 for 2003 and 2004 to avoid being in a "whipsaw"[5] position.  More specifically, respondent

[5]The term "whipsaw" refers to a situation when different taxpayers treat the same transaction involving the same items inconsistently, thus creating the possibility that income could go untaxed or two unrelated parties could deduct the same expenses on their separate returns.

determined that the Ashlands were required to report all of the capital gains income from the IA sale for 2003 and 2004 while also determining that the Brennans were required to report a portion of the same capital gains income for those years. The Ashlands and the Brennans each filed petitions with this Court for redetermination.

OPINION

We are asked to decide to what extent (if any) the Brennans and the Ashlands must recognize capital gains income from the IA sale for 2003 and 2004. We also must decide whether the Ashlands are liable for a late-filing addition to tax under section 6651(a) for 2000 and whether the Ashlands are liable for an accuracy-related penalty under section 6662(a) for each year at issue.[6] We address each issue in turn.

## I. Capital Gains Income

We first turn to whether the Brennans must recognize capital gains income from the IA sale for 2003 and 2004. Cutler was a partnership for tax purposes when

---

[6]The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous. Rule 142(a). The burden of proof may shift to the Commissioner if the taxpayer satisfies certain conditions. Sec. 7491(a). We resolve the issues here on a preponderance of the evidence, not on an allocation of the burden of proof. Therefore, we need not consider whether sec. 7491(a) would apply. See Estate of Black v. Commissioner, 133 T.C. 340, 359 (2009).

the relevant capital gains income was realized from the IA sale. A partnership is not subject to Federal income tax under subchapter K. Secs. 701, 6031. The partners, rather, are liable for tax in their separate or individual capacities. Sec. 701. Each partner is required to take into account his or her distributive share of the partnership's income, gain, loss, deductions and credits. Sec. 702(a). Moreover, a partner must take into account his or her distributive share regardless of whether any actual distribution of cash or other property is made. United States v. Basye, 410 U.S. 441 (1973); sec. 1.702-1(a), Income Tax Regs. A partner's distributive share is determined by the governing partnership agreement. Sec. 704(a).[7]

A partner's distributive share is includible in the partner's income in the taxable year of the partnership ending within or with the taxable year of the partner. Sec. 706(a). A partnership's taxable year shall close with respect to a partner who sells or exchanges his entire interest in a partnership and with respect to a

---

[7]The partnership agreement includes all understandings and agreements among the partners, or between one or more partners and the partnership, concerning affairs of the partnership and responsibilities of partners, whether oral or written, and whether or not embodied in a document referred to by the partners as the partnership agreement. Sec. 1.704-1(b)(2)(ii)(h), Income Tax Regs. Therefore, the allocation of the capital gains income from the IA sale to Mr. Brennan and Ms. Ashland set forth in the restructuring agreement overrides any different allocation set forth in a prior Cutler partnership agreement or other document.

partner whose entire interest is liquidated.  Sec. 1.706-1(c)(2)(i), Income Tax Regs.

The Brennans argue that Mr. Brennan's status as a partner of Cutler for tax purposes terminated in 2002 and therefore Mr. Brennan did not realize any capital gains income from the IA sale in 2003 or 2004.  Respondent counters that Mr. Brennan was a Cutler partner for tax purposes for 2003 and 2004 and therefore must take into account his distributive share of the capital gains income from the IA sale.  We agree with respondent.

A partner that retires[8] or otherwise withdraws from a partnership remains a partner for tax purposes until his or her interest in the partnership has been completely liquidated.  Scott v. Commissioner, T.C. Memo. 1997-507, aff'd without published opinion, 182 F.3d 915 (5th Cir. 1999); sec. 1.736-1(a)(1)(ii), Income Tax Regs.  A retiring partner's interest in a partnership is completely liquidated when the entire partnership interest is terminated through a distribution or series of distributions to the partner by the partnership.  Secs. 736(b), 761(d); sec. 1.761-1(d), Income Tax Regs.  The partnership interest liquidates upon the final

---

[8]A partner retires when he or she ceases to be a partner under local law.  Sec. 1.736-1(a)(1)(ii), Income Tax Regs.

distribution to the partner where the interest is to be liquidated through a series of distributions. Sec. 1.761-1(d), Income Tax Regs.

Here, Mr. Brennan was entitled to receive 44.985% of the net IA sale proceeds in complete liquidation of his partnership interest[9] in Cutler after the IA sale. Cutler received proceeds from the IA sale in 2003 and 2004, yet never distributed any amount of the net IA sale proceeds to Mr. Brennan. Nor did Cutler make any other distribution of cash or property in complete liquidation of Mr. Brennan's partnership interest in Cutler before the end of 2004. Accordingly, Mr. Brennan remained a Cutler partner for tax purposes for 2003 and 2004. Consequently, Mr. Brennan must take into account his distributive shares of the capital gains income from the IA sale for 2003 and 2004 as set forth in the restructuring agreement, along with various other partnership items as required under section 702(a).

We now address what portion of the capital gains income from the IA sale for 2003 and 2004 the Ashlands must recognize. The Ashlands do not dispute that Ms. Ashland was a Cutler partner for tax purposes during 2003 or 2004. Therefore, Ms. Ashland must take into account her distributive shares of the capital gains

_____

[9]Because Cutler is a partnership for tax purposes and for convenience and clarity, we refer to Mr. Brennan's membership interest in Cutler as a partnership interest.

income from the IA sale for 2003 and 2004 as set forth in the restructuring agreement, along with various other partnership items as required under section 702(a).

II.  Addition to Tax

We next turn to whether the Ashlands are liable for the late-filing addition to tax under section 6651(a)(1) for 2000.  The late-filing addition to tax is imposed for failure to file a tax return on or before the specified filing date unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).  The Commissioner has the burden of production with respect to additions to tax.  Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  To meet this burden, the Commissioner must produce sufficient evidence establishing that it is appropriate to impose the additions to tax.  See Higbee v. Commissioner, 116 T.C. at 446-447.  If the Commissioner meets his burden, then the taxpayer bears the burden of proving that the late filing or nonfiling was due to reasonable cause and not willful neglect. Id. at 446.

Respondent satisfied his burden of production by showing that the Ashlands did not timely file their income tax return for 2000.  In contrast, the Ashlands have not demonstrated nor argued that they timely filed a joint income tax return for

2000. Moreover, the Ashlands have not established nor argued that their failure to file is due to reasonable cause and not due to willful neglect. Accordingly, we sustain respondent's determination that the Ashlands are liable for the late-filing addition to tax for 2000.

## III. Accuracy-Related Penalties

We last address respondent's determination that the Ashlands are liable for an accuracy-related penalty under section 6662(a) for each year at issue. The Commissioner has the burden of production, and the taxpayer has the burden as to reasonable cause. Sec. 7491(c); Rule 142(a); see Higbee v. Commissioner, 116 T.C. at 446-447.

A taxpayer is liable for an accuracy-related penalty on any part of an underpayment attributable to, among other things, a substantial understatement of income tax. Sec. 6662(b)(2). There is a substantial understatement of income tax if the amount of the understatement exceeds the greater of either 10% of the tax required to be shown on the return or $5,000. Sec. 6662(a), (b)(2), (d)(1)(A); sec. 1.6662-4(a), Income Tax Regs.; see Jarman v. Commissioner, T.C. Memo. 2010-285. We find that respondent has met his burden of production if Rule 155 computations show the Ashlands have a substantial understatement of income tax

for each year at issue.  See Higbee v. Commissioner, 116 T.C. at 446; Jarman v.

Commissioner, T.C. Memo. 2010-285.

A taxpayer is not liable for an accuracy-related penalty, however, if the

taxpayer acted with reasonable cause and in good faith with respect to any portion

of the underpayment.  Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  The

Ashlands failed to establish or even argue that the reasonable cause exception

applies to any of their underpayments.  Moreover, the record does not establish that

the Ashlands acted with reasonable cause and in good faith with respect to any

portion of the underpayment for any of the years at issue.  Accordingly, we sustain

respondent's determination that the Ashlands are liable for the accuracy-related

penalty for each year at issue.

We have considered all arguments made in reaching our decision and, to the

extent not mentioned, we conclude that they are moot, irrelevant or without merit.

To reflect the foregoing, and due to the parties' concessions,

Decisions will be entered under

Rule 155.