T.C. Memo. 2020-66

UNITED STATES TAX COURT

LAURENCE GLUCK AND SANDRA PRUSOCK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3435-19.                          Filed May 26, 2020.

Bob G. Goldberg, for petitioners.

Thomas J. Kerrigan, Theodore R. Leighton, and Brian E. Peterson, for

respondent.

MEMORANDUM OPINION

LAUBER, Judge:  This case arises from a determination by the Internal

Revenue Service (IRS or respondent) that petitioners were not permitted to defer

capital gain as part of a like-kind exchange.  On the basis of that conclusion the

IRS determined a deficiency in tax and an accuracy-related penalty.  Currently

**[\*2]** before the Court are two motions. Respondent has moved to dismiss the case for lack of jurisdiction insofar as it concerns the deficiency, conceding that we have jurisdiction as to the penalty. Petitioners have moved for summary judgment, urging that we have jurisdiction and that they are entitled to like-kind exchange treatment under section 1031 as a matter of law.[1]

After selling a condominium unit in 2012, petitioners designated as the replacement property a purported 25% interest in an apartment building. Respondent determined that the replacement property petitioners acquired was in fact an interest in a partnership. As in effect for 2012 the Code provided that like-kind exchange treatment does not apply "to any exchange of * * * interests in a partnership." Sec. 1031(a)(2)(D).

The partnership reported on its 2012 tax return that it owned the apartment building and that petitioners acquired during 2012 a 50% interest in the partnership. The partnership was subject to the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). See secs. 6221-6234 (as in effect for years before 2018). Respondent contends that his adjustment disallowing like-kind exchange treatment was necessary to conform petitioners'

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the year at issue. We round monetary amounts to the nearest dollar.

[*3] tax treatment to the treatment shown on the partnership's return and was thus a "computational adjustment" within the meaning of section 6231(a)(6). Deficiency procedures generally do not apply "to the assessment or collection of any computational adjustment." Sec. 6230(a)(1). Respondent thus urges that we lack jurisdiction to address petitioners' entitlement to like-kind exchange treatment.

We conclude that we lack jurisdiction to redetermine the deficiency but that we have jurisdiction with respect to the penalty. We will therefore grant in part respondent's motion to dismiss. Because we lack jurisdiction to address the merits of respondent's adjustment, we will deny petitioners' summary judgment motion.

## Background

The following facts are derived from the parties' pleadings, motion papers, and the exhibits and declarations attached thereto. Petitioners resided in New York when they filed their petition.

A.     Petitioners' Tax Reporting

On June 30, 2012, petitioner Laurence Gluck sold a condominium unit in New York City for $10,214,000. He wished to defer recognition of gain on this sale under section 1031. Treating the condominium unit as the "relinquished property," he began a search for "replacement property" that would qualify for

**[*4]** like-kind exchange treatment. See sec. 1.1031(k)-1(a), Income Tax Regs. Consistently with the regulations, he deposited the proceeds from the sale of the condominium unit into a "qualified escrow account" with Royal Abstract Deferred, LLC (Royal Abstract), which acted as an escrow agent. See id. para. (g)(3).

On September 5, 2012, Mr. Gluck identified 145 East 74th Street in Manhattan (Property), a rental apartment building, as a possible replacement property. He thereafter formed 145 East 74th Owner, LLC (Gluck LLC), a single-member limited liability company. Gluck LLC was treated as a disregarded entity for Federal income tax purposes. See sec. 301.7701-3(a), Proced. & Admin. Regs.

On November 29, 2012, Gluck LLC executed a contract in which it purported to acquire, for $4,625,000, a 12.5% interest in the Property. The contract lists the purchaser as Gluck LLC and the seller as the estate of Arthur D. Emil. The contract describes the asset thus acquired as an "undivided interest of 12.5% as a Tenant in Common" in the Property, including the land and the building.

Attached as an exhibit to the purchase contract was a copy of a document captioned "Tenancy in Common Agreement of 145 East 74th Street Owners." This agreement was executed July 1, 1992, by the families that held interests in the apartment building at that time. The agreement recited the parties' desire to form

[*5] a venture to "maintain, manage and operate the Property" and to "lease the Property in its entirety to a person or entity." It stated that "the principal office of the venture shall be c/o Eugene M. Grant & Co." on Park Avenue in Manhattan.

On November 29, 2012, Gluck LLC entered into a substantially similar contract with Judy Tenney in which it purported to acquire, for $4,625,000, another 12.5% interest in the Property. This contract recited that Gluck LLC thereby acquired an "undivided 12.5% interest as a Tenant in Common." A copy of the July 1992 "Tenancy in Common Agreement" was likewise attached as an exhibit to this contract.[2]

On December 7, 2012, Gluck LLC assigned to Royal Abstract its rights under the two purchase contracts. This agreement described the asset to be acquired as a "25% tenancy-in-common interest" in the Property. Acting as escrow agent, Royal Abstract completed the transaction by delivering proceeds to the sellers from Mr. Gluck's "qualified escrow account."

Petitioners jointly filed Form 1040, U.S. Individual Income Tax Return, for 2012. They included in this return Form 8824, Like-Kind Exchanges. This form stated that petitioners had engaged in a like-kind exchange, described the replace-

---

[2]The record reflects that Gluck LLC separately acquired, earlier in 2012, an additional 25% interest in the Property from members of the Bauman family and associated trusts. This distinct 25% interest is not at issue in this case.

[*6] ment property as "145 East 74th Street," and stated that the gain deferred under section 1031 was $10,042,886.

B.     Partnership Tax Reporting

Petitioners' reporting was not consistent with the reporting that the IRS received from Greenberg & Portnoy (G&P), a partnership for Federal income tax purposes. G&P's returns reported that it owned the Property and that Gluck LLC in 2012 acquired a partnership interest in G&P, as opposed to a direct ownership interest in the apartment building.

For 2011 and 2012--and apparently for many years previously--G&P filed a return on Form 1065, U.S. Return of Partnership Income.[3] These returns list the name of the partnership as "Greenberg & Portnoy, c/o Eugene M. Grant & Co.," with an address at 277 Park Avenue in Manhattan. The returns state that G&P was engaged in a rental real estate business and that this business began operations on February 1, 1962. It appears that G&P was originally formed as a family partnership and that, over successive generations, interests were divided and subdivided among family members and their heirs.

---

[3]According to IRS records, G&P had filed partnership returns since at least 1967 and reported that it was a TEFRA partnership for every year since 2007.

**[*7]**   G&P's return for 2011 reported gross rents of $2,486,006, expenses of $1,943,017, and net rental real estate income of $542,989.  It included with this return a Form 8825, Rental Real Estate Income and Expenses of a Partnership or an S Corporation.  The Form 8825 listed G&P's sole rental property as "145 East 74th Street, New York, NY."

G&P attached to its 2011 return a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., for each of the 13 partners that owned an interest during 2011.  The Schedules K-1 show that Judy Tenney and the estate of Arthur D. Emil each owned a 12.5% interest in the partnership on December 31, 2011.

G&P's return for 2012 reported gross rents of $2,669,905, expenses of $1,835,165, and net rental real estate income of $834,740.[4]  It included with this return a Form 8825 that again listed G&P's sole rental property as "145 East 74th Street, New York, NY."

G&P attached to its 2012 return a Schedule K-1 for each of the 15 partners that owned an interest during 2012, only six of whom continued to hold interests at year end.  These schedules show that Judy Tenney and the estate of Arthur D. Emil each owned a 12.5% interest in the partnership at the beginning of 2012 and

---

[4]The expenses listed included depreciation and expenses for water and sewer, plumbing and heating, painting and plastering, repairs, and elevator maintenance.

- 8 -

**[*8]** a 0% interest at the end of 2012.  Gluck LLC is shown as owning a 0%

interest in the partnership at the beginning of 2012 and a 50% interest in the

partnership at the end of 2012.  (This 50% interest consists of the 25% interest

involved here and a distinct 25% interest that Gluck LLC acquired earlier in 2012.

See supra note 2.)

The Schedule K-1 that G&P issued to Gluck LLC reported that, for 2012,

Gluck LLC had contributed capital of $17,802,894, that it had received distribu-

tions of $62,500, and that its share of the partnership's net rental real estate in-

come was $65,570.  Petitioners acknowledge receipt of this Schedule K-1.  How-

ever, they did not report their distributive share of G&P's income on their 2012

Form 1040.  Nor did they file with the IRS Form 8082, Notice of Inconsistent

Treatment or Administrative Adjustment Request (AAR).  Taxpayers are

instructed to file Form 8082 if they "believe an item was not properly reported on

the Schedule K-1 you received from the partnership."  IRS, Instructions for Form

8082, at 1 (rev. Dec. 2011).

G&P reported on each Form 1065 that it was a TEFRA partnership and that

its tax matters partner was Carolyn Grant.  On line 2 of Schedule B, Other Infor-

mation, G&P reported for each year that one or more of its partners was "a dis-

[*9] regarded entity, a partnership * * * , a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person."

C.    IRS Examination and Court Proceedings

As far as the record reveals, the IRS did not examine G&P's return for 2012.  However, the IRS selected petitioners' 2012 return for examination and issued a timely notice of deficiency that disallowed the deferral of gain under section 1031 and determined an accuracy-related penalty.  For reasons not explained in the record, the IRS made no adjustment to petitioners' return for their failure to report their $65,570 distributive share of G&P's net rental real estate income.

Petitioners timely petitioned this Court for redetermination.  On October 9, 2019, respondent filed a motion to dismiss for lack of jurisdiction, to which petitioners objected.  On November 22, 2019, petitioners filed a motion for summary judgment, to which respondent objected.  A hearing on the motions was held at the Court's trial session in New York, New York, on January 13, 2020.  At the hearing and in a supplement to his motion to dismiss, respondent confirms that he seeks dismissal only with respect to the deficiency, not the penalty.

**[\*10]**                                                   <u>Discussion</u>

A.     <u>TEFRA Background</u>

This Court is a court of limited jurisdiction, and we may exercise jurisdiction only to the extent expressly authorized by Congress.  <u>Naftel v. Commissioner</u>, 85 T.C. 527, 529 (1985); <u>Breman v. Commissioner</u>, 66 T.C. 61, 66 (1976).  We normally have jurisdiction to redetermine a deficiency if a taxpayer receives a notice of deficiency and timely petitions this Court.  <u>See</u> secs. 6213(a), 6214(a).  However, the Code restricts our deficiency jurisdiction in several respects where a TEFRA partnership is concerned.

The provisions of chapter 63, subchapter B, which govern our deficiency jurisdiction, generally do not apply "to the assessment or collection of any computational adjustment" made with respect to a partner in a TEFRA partnership.  Sec. 6230(a)(1).  Respondent contends that the adjustment to petitioners' tax liability attributable to disallowance of like-kind exchange treatment was a "computational adjustment."  Section 6231(a)(6) defines a computational adjustment as "the change in the tax liability of a partner which properly reflects the treatment under * * * [TEFRA] of a partnership item."

The TEFRA provisions specify different procedures for "partnership items" and "affected items," i.e., "any item to the extent such item is affected by a part-

[*11] nership item."  Id. para. (5).  The proper treatment of "partnership items" (as well as penalties and additions to tax relating to adjustments to partnership items) is determined in a TEFRA partnership-level proceeding.  See sec. 6221; Malone v. Commissioner, 148 T.C. 372, 375 (2017).  The proper treatment of "affected items which require partner level determinations" is generally determined in deficiency proceedings involving the relevant partner(s).  Sec. 6230(a)(2)(A)(i); see sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs.  However, "[i]f an adjustment to an affected item is merely computational and can be made without making additional partner-level determinations, the IRS can directly assess the tax due without having to follow the usual deficiency procedures."  Malone, 148 T.C. at 375-376; see sec. 301.6231(a)(6)-1(a)(2), Proced. & Admin. Regs.

A partnership item is "any item required to be taken into account for the partnership's taxable year * * * to the extent regulations prescribed by the Secretary provide that * * * such item is more appropriately determined at the partnership level than at the partner level."  Sec. 6231(a)(3); see Blonien v. Commissioner, 118 T.C. 541, 551 (2002), supplemented by T.C. Memo. 2003-308.  The regulations provide a nonexhaustive list of "partnership items."  See sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.  They include the partnership's aggregate items of income, gain, loss, deduction, and credit; each partner's

[*12] distributive share of those items; each partner's contributions to the partnership; and each partner's percentage interest in the partnership. Id. subparas. (1), (4). Whether a person is a partner in a partnership is generally a "partnership item." See Blonien, 118 T.C. at 551-552 (holding that this Court has no jurisdiction to consider, in a deficiency case, a taxpayer's argument that he was not a partner in a partnership). Indeed, the existence of a valid partnership is itself a "partnership item." Tigers Eye Trading, LLC v. Commissioner, 138 T.C. 67, 98-99 (2012), aff'd in part, rev'd in part, and remanded sub nom. Logan Trust v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015).

B.     Analysis

        1.     G&P's Status as a TEFRA Partnership

G&P filed a partnership return for 2012 and reported that it was a TEFRA partnership. Certain "small partnerships"--viz., those having "10 or fewer part-ners"--are exempt from TEFRA procedures unless they elect to be covered there-by. Sec. 6231(a)(1)(B). This exemption is available, however, only if each part-ner "is an individual * * * , a C corporation, or an estate of a deceased partner." Id. cl. (i).

G&P reported on its 2012 return that at least one of its partners was "a dis-regarded entity, a partnership * * * , a trust, an S corporation, an estate (other than

[*13] an estate of a deceased partner), or a nominee." See supra pp. 8-9. Gluck LLC, which G&P reported as being a 50% partner, was itself a disregarded entity. Because G&P during 2012 had at least one partner that was not "an individual * * * , a C corporation, or an estate of a deceased partner," it could not qualify for the small partnership exemption from TEFRA procedures, regardless of how few partners it had. For the 2012 taxable year, therefore, the TEFRA procedures apply to G&P, to its partners and affected items, and "to persons holding an interest in * * * [it]." Sec. 6233(a).[5]

### 2. G&P's "Partnership Items"

The premise for respondent's disallowance of section 1031 deferral is that the asset Gluck LLC acquired in November 2012 was a 25% partnership interest in G&P. Whether G&P was a valid partnership, whether Gluck LLC was a partner in G&P, and what percentage interest Gluck LLC held in G&P are all "partnership items" as defined by the regulations and case law set forth above. Such partner-

---

[5]If an entity files a partnership return, the TEFRA provisions generally apply even if the entity is ultimately determined not to be a partnership. See sec. 6233(a). The only exceptions are for partnership returns filed for the purpose of electing out of TEFRA or subchapter K entirely. See sec. 301.6233-1(c), Proced. & Admin. Regs. G&P filed a partnership return for 2012 and did not elect out of TEFRA or subchapter K; indeed, it was ineligible to make either election. See sec. 6231(a)(1)(B); sec. 1.761-2, Income Tax Regs. Thus, the TEFRA provisions apply "in respect of such year to such entity and its items and to persons holding an interest in such entity." Sec. 6233(a).

[*14] ship items must be determined in a partnership-level proceeding, as opposed to a deficiency case such as this. "We have no jurisdiction to consider partnership items in a partner-level deficiency proceeding." Blonien, 118 T.C. at 551-552.

Whether G&P owned the apartment building at 145 East 74th Street is likewise a "partnership item." On its Form 1065 for 2012 G&P reported that it was engaged in the rental real estate business and listed that apartment building as its only rental real estate property. It reported gross rents of $2,669,905, which necessarily were received from tenants in that building. And it reported deductions of $1,835,165 for expenses, including depreciation and expenses for water and sewer, plumbing and heating, painting and plastering, repairs, and elevator maintenance. All of these expenses were necessarily incurred with respect to that apartment building.

The term "partnership item" includes "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs. Unless G&P owned the building, it was not the proper party to report gross rents from the tenants as its income. And unless G&P owned the building, it was not entitled to claim depreciation and other building-related expenses as its deductions. Whether G&P owned the building, therefore, involves

[*15] legal and factual determinations that underlie the determination of G&P's items of income and deduction. G&P's ownership vel non of the building is thus a "partnership item" that must be determined in a partnership-level proceeding.

This conclusion is consistent with the policy underlying the TEFRA regime. Congress enacted these provisions "to remove the substantial administrative burden occasioned by duplicative audits and litigation and to provide consistent treatment of partnership income, gain, loss, deductions, and credits among all partners in the same partnership." Samueli v. Commissioner, 132 T.C. 336, 340 (2009). If G&P's ownership of the building and each partner's status as a partner were litigated in separate partner-level proceedings, there would obviously be "duplicative audits and litigation," possibly with conflicting results. See ibid. On the other hand, if ownership of the building and the partners' status as partners are resolved in a single partnership-level proceeding, the results can be applied consistently to all interested parties as Congress intended.

3. Respondent's "Computational Adjustment"

The IRS did not initiate a partnership-level proceeding involving G&P, but it did examine petitioners' return for 2012. By claiming like-kind exchange treatment on that return, petitioners treated Gluck LLC as having acquired a direct ownership interest in the apartment building and the land beneath it. The IRS

[*16] determined that petitioners thereby treated partnership items--G&P's status as a partnership, Gluck LLC's status as a partner in G&P, and G&P's ownership of the Property--in a manner inconsistent with the treatment that G&P adopted on its return. Although petitioners dispute the true ownership of the Property and Gluck LLC's status as a partner, we have no jurisdiction to consider such partnership items in a deficiency case such as this. See Blonien, 118 T.C. at 551-552.

Section 6222(a) requires each partner in a TEFRA partnership to treat partnership items "in a manner which is consistent with the treatment of such partnership item on the partnership return." If a partner fails to do this, he must provide the IRS with notice "identifying the inconsistency." Id. subsec. (b)(1)(B); see Samueli, 132 T.C. at 340; sec. 301.6222(b)-1(a), Proced. & Admin. Regs. The Secretary has prescribed Form 8082 as the vehicle for notifying the Commissioner of inconsistent treatment. Petitioners did not submit Form 8082 or otherwise notify the IRS that they were adopting on their return a position inconsistent with the information that G&P furnished them on Schedule K-1.

Section 6225(a) generally prohibits the IRS from assessing "a deficiency attributable to any partnership item" until TEFRA partnership-level proceedings have concluded. However, if a partner who adopts an inconsistent treatment fails

**[\*17]** to notify the IRS as required by section 6222(b), "section 6225 shall not apply to any part of a deficiency attributable to any computational adjustment required to make the treatment * * * by such partner consistent with the treatment of the items on the partnership return." Sec. 6222(c).

Section 6231(a)(6) defines a "computational adjustment" to mean "the change in the tax liability of a partner which properly reflects the treatment under * * * [TEFRA] of a partnership item." The Code denies like-kind exchange treatment where a real property interest is exchanged for a partnership interest. See sec. 1031(a)(2)(D). Because Gluck LLC's interest in G&P was a partnership item, the IRS' disallowance of deferral under section 1031 was a change in petitioners' tax liability that properly reflected G&P's treatment of a partnership item. Respondent accordingly contends that his adjustment to petitioners' tax liability for 2012 was a "computational adjustment."

The provisions governing this Court's deficiency jurisdiction generally do not apply "to the assessment or collection of any computational adjustment." Sec. 6230(a)(1). The only exception to this rule (as relevant here) arises in the case of a "deficiency attributable to * * * affected items which require partner level determinations." Id. para. (2)(A)(i). Petitioners' entitlement to like-kind

[*18] exchange treatment is properly viewed as an "affected item" because it is "affected by a partnership item." Sec. 6231(a)(5).

An affected item may be a "computational affected item" or a "factual affected item." Malone, 148 T.C. at 376-377. Computational affected items (e.g., a partner's medical expense deduction) can be determined automatically once the relevant partnership item (e.g., that partner's distributive share of partnership income) has been determined. See, e.g., Bedrosian v. Commissioner, 144 T.C. 152, 158 (2015). A factual affected item is one that "requires further factual determination at the partner level." Malone, 148 T.C. at 377. A common example is a determination whether (and to what extent) a particular partner is "at risk" with respect to his partnership investment. Sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs.; see Malone, 148 T.C. at 377; Hambrose Leasing 1984-5 Ltd. P'ship v. Commissioner, 99 T.C. 298, 310 (1992). "Computational affected items are not subject to deficiency procedures," whereas "affected items that require partner-level factual determinations are subject to deficiency procedures." Malone, 148 T.C. at 377.

It seems clear that no partner-level factual determinations--e.g., to ascertain Mr. Gluck's basis in the condominium unit or his amount realized on its sale--are required here. Rather, once Gluck LLC is deemed to have acquired a partnership

[*19] interest rather than a real estate interest, consistently with the treatment of partnership items on G&P's return, petitioners' nonentitlement to section 1031 deferral follows automatically as a matter of law. That result does not depend on any facts or circumstances particular to petitioners or Gluck LLC.

We accordingly conclude that petitioners' entitlement to section 1031 treatment is not a "factual affected item" but rather is a "computational affected item" exempt from deficiency procedures. See Malone, 148 T.C. at 376-377. "If an adjustment to an affected item * * * can be made without making additional partner-level determinations, the IRS can directly assess the tax due without having to follow the usual deficiency procedures." Id. at 375-376 (citing section 6230(a)(i)); see Callaway v. Commissioner, 231 F.3d 106, 109 (2d Cir. 2000), rev'g T.C. Memo. 1998-99. We thus lack jurisdiction to redetermine this deficiency.

C.    Petitioners' Arguments

Petitioners advance several arguments in support of a contrary conclusion. First, they assert that "there is no legal entity with the name of 'Greenberg & Portnoy.'" But G&P's existence as a valid partnership is a "partnership item." See Tigers Eye Trading, LLC, 138 T.C. at 98-99. The legal and factual questions that underlie the determination of G&P's income and deductions are likewise "partnership items." See sec. 301.6231(a)(3)-1(b), Proced. & Admin. Regs. Because

[*20] such questions must be decided in a partnership-level proceeding, they are precisely the types of questions that we lack jurisdiction in this deficiency case to address. See sec. 6221. The TEFRA rules apply once an entity files a partnership return for a particular year, even if "it is determined that the entity is not a partnership for such year." Sec. 6233(a).

Second, petitioners suggest that "computational adjustments" should be limited to numerical or mathematical operations by the IRS, e.g., correcting a partner's reported distributive share of partnership income to match the amount shown on his Schedule K-1. Although computational adjustments often take this form, the Code defines the term more broadly to mean any "change in the tax liability of a partner which properly reflects the treatment under * * * [TEFRA] of a partnership item." Sec. 6231(a)(6). Unless an affected item is a "factual affected item" requiring a partner-level factual determination, it is necessarily a "computational affected item." See Malone, 148 T.C. at 377. Petitioners' entitlement to section 1031 treatment falls into the latter category, and the procedures governing our deficiency jurisdiction thus do not apply. See sec. 6230(a)(1).

Third, petitioners contend that the purported like-kind exchange, having been reported on their Form 1040 rather than on G&P's Form 1065, cannot properly be regarded as a "partnership item." That is correct. The "partnership items"

[*21] involved here are G&P's validity as a partnership, Gluck LLC's status as a partner in G&P, and the ownership of the Property. The premise for petitioners' claim to like-kind exchange treatment is 100% inconsistent with the treatment of these partnership items on G&P's return. The denial of like-kind exchange treatment is a "computational adjustment" because it is "the change in the tax liability of a partner which properly reflects the treatment under * * * [TEFRA] of a partnership item." Sec. 6231(a)(6). Many computational adjustments--e.g., changes to a partner's medical expense deduction to make it consistent with his correct distributive share of partnership income--involve changes to tax items that appear on the partner's return only. See Bedrosian, 144 T.C. at 158; sec. 301.6231(a)(6)-1(a)(2), Proced. & Admin. Regs.

Finally, petitioners assert that "it would have been impossible for * * * [them] to have any suspicion that certain other * * * [owners] had filed a partnership return." This is plainly not the case. Petitioners or their advisers presumably did due diligence before finalizing the decision to invest $9.25 million in the Property. The record includes annual financial statements prepared for the "Joint Venture of Pauline Greenberg and Sophie L. Portnoy, d/b/a 145 East 74th Street." These documents clearly state that the joint venture "was organized as a New York partnership in February 1962 to acquire and operate * * * [the Property] for the

[*22] purpose of generating rental income." The financial statements indicate that they were "prepared on the income tax basis of accounting used by the partnership."[6]

In any event, G&P issued a Schedule K-1 to Gluck LLC for 2012, and petitioners acknowledge that they received this document. The Schedule K-1 plainly stated that Gluck LLC had become a 50% partner in G&P during 2012, that it had contributed capital of $17,802,894 to G&P during 2012, that it had received distributions of $62,500 from G&P during 2012, and that its share of G&P's net rental real estate income was $65,570.

Having received a Schedule K-1 that they evidently thought to be incorrect, petitioners had a clear path to follow. As required by section 6222(b)(2), they should have filed a Form 8082 with their 2012 tax return, notifying the IRS that they believed the Schedule K-1 to be erroneous and that they were adopting a position inconsistent with it. That would have enabled the IRS to open a partnership audit of G&P in an effort to determine which treatment was correct. At the very least petitioners could have contacted G&P, at the address shown on the

---

[6]The financial statements include a "Statement of Changes in Partners' Capital," showing each partner's capital account, percentage interest in the partnership, and "partner distributions" for each year. They repeatedly refer to the "partnership" and its "partners" and to adjustments made pursuant to section 743 of subchapter K.

[*23] Schedule K-1, to express their disagreement and inquire about the next steps. Having failed to do any of this, they opened themselves up to a computational adjustment that the IRS was authorized to assess immediately. See sec. 6222(c); Malone, 148 T.C. at 374.[7]

D.     Accuracy-Related Penalty

The accuracy-related penalty that respondent has asserted requires a different analysis. Deficiency procedures do not apply to "penalties, additions to tax, and additional amounts that relate to adjustments to partnership items." Sec. 6230(a)(2)(A)(i). Penalties determined under section 6662(a), however, are nonpartnership items. See Malone, 148 T.C. at 378. As a rule, therefore, such

---

[7]Petitioners note that the IRS did not seek to make a computational adjustment at the examination level or during Appeals Office consideration. Rather, respondent first advanced this argument in his motion to dismiss for lack of jurisdiction. It is well established, however, that parties may advance arguments addressing our jurisdiction (or lack of it) at any stage of a case. Charlotte's Office Boutique v. Commissioner, 121 T.C. 89, 102 (2003), supplemented by T.C. Memo. 2004-43, aff'd, 425 F.3d 1203 (9th Cir. 2005); Normac, Inc., & Normac Int'l, Ltd. v. Commissioner, 90 T.C. 142, 146-147 (1988); Kahle v. Commissioner, 88 T.C. 1063, 1063 n.3 (1987). During oral argument respondent's counsel explained that, because the distinction between "computational affected items" and "factual affected items" sometimes involves a gray area, the IRS may avoid the risk of whipsaw by issuing a notice of deficiency in such cases and then moving to dismiss for lack of jurisdiction once the case is docketed in this Court. See Internal Revenue Manual pts. 4.31.2.3.15 (Apr. 20, 2017), 8.19.1.6.9.3 through 8.19.1.6.9.7 (Oct. 1, 2013) (discussing the difficulties sometimes presented by these questions).

**[*24]** penalties are subject to deficiency proceedings unless they are "computational affected items."

We agree with respondent that the accuracy-related penalty determined here lies within our deficiency jurisdiction. Petitioners adopted on their return a treatment inconsistent with the treatment of partnership items reported on G&P's return. Here, as in Malone, the IRS made no adjustment to any partnership item; it simply adjusted petitioners' tax liability to "properly reflect[] the treatment under * * * [TEFRA] of a partnership item" as reported by G&P. See sec. 6231(a)(6).

Since there has been no adjustment to any partnership item, "the section 6230(a)(2)(A)(i) exclusion from deficiency procedures is inapplicable" in this case, as it was in Malone. See Malone, 148 T.C. at 380. And petitioners' liability for the penalty is not a "computational affected item," because their liability hinges on factual determinations peculiar to them, e.g., their good-faith effort to determine their Federal income tax liability correctly, including any honest misunderstanding of fact or law. See id. at 377; sec. 1.6664-4, Income Tax Regs; sec. 301.6231(a)(6)-1(a)(3), Proced. & Admin. Regs. We accordingly have jurisdiction to redetermine the accuracy-related penalty.

[*25] To reflect the foregoing,

        <u>An order will be issued granting in part and denying in part respondent's motion to dismiss for lack of jurisdiction and denying petitioners' motion for summary judgment</u>.